461 A.2d 613

COMMONWEALTH of Pennsylvania, Appellant,

v.

C. Alton WADE, Jr., Appellee.

Supreme Court of Pennsylvania.

Argued April 19, 1983.

Decided May 27, 1983.

Reargument Denied July 13, 1983.

Lee Ruslander, Chief, Appeals Div., West Chester, for appellant.

Alan Lourie, John R. Merrick Asst. Public Defenders, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION

LARSEN, Justice.

On April 17, 1974, appellee C. Alton Wade, Jr. was convicted by a jury of voluntary manslaughter and sentenced to a term of imprisonment of five to ten years. On appeal, this Court vacated the judgment of sentence and remanded for an evidentiary hearing on the issue of trial counsel's ineffectiveness in failing to produce one Sam Stearly as an alibi witness at trial. *Commonwealth v. Wade*, 480 Pa. 160, 389 A.2d 560 (1978). After conducting an evidentiary hearing, the court of common pleas concluded that trial counsel's failure to interview Sam Stearly and to call him as an alibi witness constituted ineffective assistance of counsel and granted appellee a new trial. This direct appeal by the Commonwealth followed.

The Commonwealth contends that trial counsel was not ineffective in failing to produce Sam Stearly at trial because Sam Stearly could not have provided an alibi for appellee even if he had testified. We agree.

"The test of constitutionally effective assistance of counsel is whether a 'particular course chosen by counsel had *some reasonable basis* designed to effectuate his client's interests'." *Commonwealth v. Upsher*, 497 Pa. 621, 626, 444 A.2d 90, 92 (1982) (emphasis in original; citation omitted).

■ With respect to the course chosen by counsel in this case—failing to interview and call Sam Stearly as an alibi

witness—"[i]t is well-settled that the failure of trial counsel to call a potential alibi witness does not constitute ineffective assistance unless there is some showing that the testimony of the absent witness would have been helpful in establishing the asserted defense." *Commonwealth v. Leonard,* 499 Pa. 357, 362, 453 A.2d 587, 589 (1982). *See also Upsher, supra* 497 Pa. at 626, 444 A.2d at 92 ("The initial factor that is considered in applying this standard is whether the matters counsel is charged with failing to competently pursue had arguable merit.").

■ In this case, there was no showing that the testimony of Sam Stearly would have helped appellee establish an alibi defense. "Alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Commonwealth v. Whiting,* 409 Pa. 492, 498, 187 A.2d 563, 566 (1963). In this regard, the record reveals the following facts.

Appellee was convicted of voluntary manslaughter for "stomping" on the abdomen of two-year-old Daniel Strong, the son of the woman with whom appellee was then living, thus causing his death. At trial, Daniel's mother Regina Strong testified that on December 1, 1973, she brought Daniel into appellee's and her bedroom "somewheres around four o'clock"; that appellee was in the bedroom at the time; that after Regina Strong took Daniel to the bathroom, she brought him back into the bedroom where he was hit several times with a "horse crop"; that he was taken back to the bathroom for five more minutes; and that he was then brought back to the bedroom, hit several more times with the "horse crop," and, finally, "stomped." Michele Sauvage, who also lived in the house with appellee and Regina Strong,[1] testified that some time "between two-thirty and three-thirty" she saw Regina Strong take Daniel into the bedroom; that she heard appellee's voice coming from the bedroom; that she then heard the sounds of leather hitting

---

1. Three couples—appellee and Regina Strong, Andrew Ogorzalek and Charlene Hyatt, and Keith McPhee and Michele Sauvage—and several children were living in the house on appellee's farm on

skin and Daniel crying; and that these sounds continued for twenty to twenty-five minutes.

Based upon this testimony, an alibi witness for appellee would have to place appellee outside the house and away from Daniel from 2:30 until approximately 4:30 on December 1. The record fails to reveal how Sam Stearly could provide this alibi, however.

At the post-trial evidentiary hearing, Sam Stearly testified that he went to appellee's farm to pick up a chain saw from appellee; that he did not remember what time he arrived at the farm, although it was light outside; that he first went to the house where he saw a lady with a child in underpants or diapers and where he met appellee; and that he stayed at the farm "over an hour, considerably, probably." Also at the hearing, appellee testified that Sam Stearly had come to the farm to get a chain saw; that he had told his attorney "that [Sam Stearly] did come to the farm, what he was there for, and that he would substantiate parts of the day, or where I [appellee] was at"; that he recalled that Sam Stearly was at the farm around 4:00 or 4:30 on December 1; that he did not recall where on the farm he met Sam Stearly; and that although Sam Stearly came to visit him in prison prior to the trial, he never informed Stearly that he might be called as a witness at trial.

This testimony indicates that neither Sam Stearly nor appellee could state what time Sam Stearly arrived at the farm, how long he stayed, what he did during the time he was at the farm, whether appellee was with him the entire time, or when he left.

Such testimony is certainly not sufficient to prove that appellee was in a different place than Daniel and so far removed as to make it impossible for him to have been "disciplining" Daniel at any time between 2:30 and 4:30 on the afternoon of December 1. We will not speculate as to appellee's whereabouts during this period of time based upon this meager testimony, nor will we assume that the

December 1, 1973. The farm premises consisted of the house, a barn and a garage.

testimony at a new trial would be any more revealing than was the testimony at the post-trial evidentiary hearing.

Nor does this lack of information appear to be simply the result of the passage of time between the date of appellee's trial in 1974 and the date of the evidentiary hearing in 1978. At trial, appellee took the stand and testified extensively as to the events and his movements on December 1. Nevertheless, even in response to general questions about his activities and more specific questions as to who was in the barn during the day, appellee never mentioned the name of Sam Stearly, nor did he mention meeting anyone concerning a chain saw.

Appellee has failed to meet his burden of proving that Sam Stearly's testimony at trial could have established an alibi defense, and hence that counsel was ineffective. *See Commonwealth v. McKenna,* 498 Pa. 416, 421, 446 A.2d 1274, 1276 (1982).

Accordingly, the order of the Court of Common Pleas of Chester County granting appellee a new trial is reversed and the judgment of sentence is reinstated.

ROBERTS, C.J., concurs in the result.