554 A.2d 20

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Jerre HENTOSH, Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 30, 1988.

Decided Feb. 3, 1989.

328

Lorinda L. Hinch, Supervisory Asst. Dist. Atty., Mercer, for appellant.

Paul R. Gettleman, Zelienople, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

McDERMOTT, Justice.

Appellee was convicted by a jury on charges of burglary,[1] receiving stolen property,[2] and criminal conspiracy,[3] in the Court of Common Pleas of Mercer County on April 21, 1982. He filed post-trial motions in which he alleged, *inter alia,* that he had been denied the effective assistance of counsel. On December 22, 1982, the court granted his motion for arrest of judgment on the conviction for receiving stolen property but denied his remaining claims. He was subse-

1. 18 Pa.C.S. § 3502.
2. 18 Pa.C.S. § 3925.
3. 18 Pa.C.S. § 903.

quently sentenced to a term of eleven (11) to twenty-three (23) months confinement on the burglary conviction. He also received a suspended sentence on the conviction for criminal conspiracy.

Appellee then appealed to the Superior Court raising the issue of ineffective assistance of his trial counsel. That court, in a *per curiam* order, affirmed the trial court's judgment of sentence. *Commonwealth v. Hentosh,* 341 Pa.Super. 615, 491 A.2d 918 (1985). Appellee then petitioned this court for allocatur. That petition was granted, and by *per curiam* order we reversed the order of the Superior Court and remanded the record to the trial court for a hearing on the ineffectiveness claim. *Commonwealth v. Hentosh,* 509 Pa. 158, 501 A.2d 247 (1985). Following the hearing on remand the trial court found merit in appellee's ineffectiveness claim and granted him a new trial. On appeal the Superior Court affirmed the decision of the trial court. *Commonwealth v. Hentosh,* 371 Pa.Super. 643, 534 A.2d 130 (1987). The Commonwealth then petitioned for allowance of appeal. We granted this petition to examine whether appellee successfully demonstrated that the testimony of the missing witnesses on which he predicated his ineffectiveness claim would have been helpful to his cause.

The underlying facts of this case are these. Appellee operated a business in Greenville in which he dealt in buying and selling gold and silver, among other things. On occasion Mr. Louis G. Milliron of Greenville, Mercer County, an employee of National Gas Company, made service calls to the business. During the service calls he saw a sign in appellee's window stating that appellee was buying silver and gold. He engaged in conversations with appellee approximately four times prior to December 18, 1980, during which he told appellee of his coin collection. Mr. Milliron also told appellee that he had some silver he might sell. During the night of December 18, 1980, Mr. Milliron's home was burglarized. His coin collection and other items were stolen. The following day Mr. Milliron went to appellee's place of business to tell him that he was offering a reward

for information on his missing collection. There he observed Frank Shannon and Clyde Devore talking with appellee in the process of selling him a coin or coins. At the time Mr. Milliron was not close enough to the exchange to observe the coins in the transaction. However, he did observe on Shannon's wrist his watch which had been stolen in the burglary the night before. Mr. Milliron went across the street to the Greenville Police Department to inform them of his observations and then returned to the store. He announced that Shannon was wearing his watch. Shannon and Devore hastily took a check from appellee and left the store to be followed by Milliron who was soon joined by two policemen. The policemen took the two into custody after a brief pursuit. Shannon and Devore subsequently pled guilty to the Milliron burglary among others. Most of the items stolen from Milliron were recovered from Shannon and Devore. However, an 1881 Liberty ten-dollar gold piece was not recovered.

Shannon testified that on December 12, 1980, while in appellee's store with Devore, appellee gave him Milliron's name and told him the general area where he lived. He proposed that Shannon and Devore burglarized Milliron's home for the specific purpose of stealing the coin collection, and that he would share in its value with them. Shannon stated that he and Devore had consummated several prior deals with appellee. As an example he testified that appellee had directed them to his store in Warren, Ohio, for the purpose of fencing stolen guns, and that following appellee's directions they went there and sold them for $500.

On the night in question it was the burglars' intent to steal the coin collection which appellee had told them was in Milliron's home. Shannon testified that appellee in his post-burglary dealings with them did not want to be informed of the relationship between the items they sold him and specific burglaries. He did, however, want Shannon to let him know which articles were "hot" in order that he could melt them down quickly. Although appellee had instructed them to wait until things "cooled down" after the

Milliron burglary, Shannon testified that when they were observed by Milliron the next day they were in the process of selling a ten-dollar gold piece to appellee which was stolen at Milliron's the night before.

The Commonwealth's exhibits consisted of a check in the amount of $100 made out to "cash" signed by appellee and dated December 19, 1980, as well as a business card of appellee containing directions to, and the address of, appellee's store in Warren, Ohio, with the figure $500 written thereon. These items were recovered from the burglars at the time of their arrest.

Appellee testified in his own defense that he had directed Shannon and Devore to his Ohio store, that they might dispose of guns, without knowing that they had been stolen in burglaries. He explained that he merely referred them to a third party who bought guns and watches and who frequented the Warren store. He testified that the coin he purchased from the burglars the day after the Milliron robbery was a 2½ dollar gold piece, not the 10 dollar gold piece that Shannon testified he sold him. He testified that he was not aware that Shannon and Devore were burglars or that the items they sold him on the occasions of their visits were "hot". He denied that he told the burglars of Milliron's coin collection, and specifically denied the existence of an agreement with them to dispose of the items or share in the proceeds. He went on to testify that after Shannon and Devore were arrested Milliron returned to his store and he showed him a 2½ dollar gold piece. He asserted that he had no 10 dollar gold pieces in the store at that time. This last was on cross-examination. He was not given the opportunity to state either then or on redirect examination that Milliron at that time was accompanied by an officer or officers of the Greenville Police who were then present to hear Milliron state that the piece which appellee showed him was not from his collection. Consequently, no such averment was part of the trial record or considered by the jury. In addition, Lori Morford, who appellee identified as his bookkeeper/secretary, neither appeared nor testified

at trial, although appellee placed her in the store at the time of the events of December 19.

In a memorandum in support of appellee's request for a new trial, submitted after the evidentiary hearing on remand, appellee specifically asserted:

> Lori Morford's testimony was critical to the defense of Jerre Hentosh's case. Morford would have testified that she was present when Shannon and Devore entered the store on or about December 12, 1980, and they brought in some merchandise to sell and the store was very small and narrow and she could hear all of the conversation that took place and there was never any discussion either on that day or any other working day, in that store, between Hentosh and either burglar as it related to the burglary of the Milliron residence. Further, Ms. Morford would have testified that she, rather than Hentosh, was the one who wrote out the checks that were paid to Shannon and Devore. She also was in the store on December 19, 1980 when Milliron came into the store with the police and stated that the gold coin in question did not come from his house. Her testimony would have seriously impeached the testimony of the two admitted burglars, who were testifying as Commonwealth witnesses against Jerre Hentosh.

> In addition, prior to trial, Hentosh requested his attorney to subpoena Officers Sherbondy and Pinkle from the Greenville Police Department. Sherbondy would have testified that he and Pinkle accompanied Milliron into Hentosh's store, the victim saw the gold coin in question, which the two burglars claimed that they took from his residence, and said that the coin did not belong to him. That testimony would have destroyed the credibility of Frank Shannon, who testified that on December 19, 1980, the same day that Milliron and the police came into Hentosh's store, he had just sold Hentosh a $10 dollar gold piece from the Milliron burglary, the only evidence linking the defendant to the crimes charged.

The trial court relied almost exclusively upon these allegations in awarding a new trial. The Superior Court on review agreed that appellee's counsel at trial had been ineffective in that he failed to subpoena the two defense witnesses, Lori Morford and Officer Sherbondy, and affirmed the lower court's order.

In this appeal it is the contention of the Commonwealth that appellee failed to prove his allegations at the evidentiary hearing on remand and, consequently, failed to establish his claim of ineffectiveness. As its second claim of error the Commonwealth asserts that since appellee knew the locations of both Lori Morford and of her parents who were in contact with her, he had the means to obtain her presence and testimony at trial himself. Therefore, the Commonwealth argues, his counsel should not be found ineffective for not having subpoenaed her.

Since we find merit in the Commonwealth's first issue we need not address the second.

■ Approaching our task of determining whether counsel's assistance was effective we initially presume that it was. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967). Then, in analyzing a defendant's claim, we examine whether the claimant's allegations are possessed of arguable merit., *Pierce, supra; Commonwealth v. Stoyko,* 504 Pa. 455, 475 A.2d 714 (1984); *Maroney, supra.* We next determine whether of the alternatives available to counsel in presenting the defense those chosen were possessed of a reasonable basis in effecting his client's interests. *Id.; Commonwealth v. Wade,* 501 Pa. 331, 461 A.2d 613 (1983). Assuming positive resolution of both inquiries above, we require finally that the claimant demonstrate how the asserted ineffectiveness prejudiced his cause. *Pierce, supra; Commonwealth v. Clemmons,* 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth v. Vogel,* 501 Pa. 314, 461 A.2d 604 (1983), *Cert. den'd,* 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984).

■ In conducting this analysis it is important to bear in mind that allegations of the deprivation of the right to effective representation of counsel are not self-sustaining. The burden of proof of the allegations remains with the claimant, their accuracy still to be established by his submission of relevant proofs. *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981); *Commonwealth v. Shore*, 487 Pa. 534, 410 A.2d 740 (1980); *Commonwealth v. Logan*, 468 Pa. 424, 364 A.2d 266 (1976); *Maroney, supra*.

Applying these principles to the present case we begin by recognizing our earlier determination that appellee's allegations would, if proven, entitle him to relief. *Commonwealth v. Hentosh, supra*, 509 Pa. at 158, 501 A.2d 247.

Next, we note that if, as appellee has alleged, the missing witnesses would have rendered favorable testimony, no reasonable excuse appears of record why they were not called. Similarly, assuming such favorable testimony, appellee would certainly have been prejudiced by their absence. However, we cannot make such assumptions, and as noted above appellee was not entitled to relief based upon mere allegations. Therefore, we must review this record to determine whether appellee sustained his burden of demonstrating trial counsel's ineffectiveness in failing to obtain their evidence. Requisite to this examination is proof of the substance of that to which they would have testified had they been summoned to the trial.

■ With respect to Officer Sherbondy, he did not appear at the evidentiary hearing. The record then is void of proof of the substance of his evidence. Therefore, we are unable to determine whether his testimony would have been favorable and, consequently, we cannot determine whether counsel's restraint lacked a reasonable basis. In short appellee has failed to sustain his burden of demonstrating that counsel's failure to call Officer Sherbondy constituted ineffectiveness. *McNeil, supra. See also Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983).

■■■■  With respect to the second witness, appellee's bookkeeper/secretary Lori Morford, she did testify at the hearing; stating that she had worked in appellee's store during the relevant period, and that the space inside was small enough that conversations could be overheard. During her testimony the following exchange occurred.

.  .  .  .  .

Q. Now, did there come a time when two individuals by the name of Shannon and Devore came into your store to sell you some merchandise?

A. Yes.

Q. And who paid them, who actually tendered them the money?

A. I did.

Q. Was that in the form of cash or check?

A. It was a check.

Q. Okay, now, in addition, did you on December 12, 1980,[4] when they received this check, did you hear any conversations from either one of them that they had burglarized or had anything to do with the burglary of the Milliron residence?

A. No.

Q. Were you present on December 19th, 1980, when the victim of the burglary, Mr. Milliron, himself, came into the store?

A. Yes, I was.

.  .  .  .  .

In his memorandum filed in support of a new trial appellee alleged that she would have testified at trial that the burglars and appellee did not develop the scheme and agreement to burglarize Milliron's on December 12th, and that Milliron stated that the coin showed him after the arrests of the burglars was not his, all of which would, he

---

**4.** The question is inartful. Testimony at trial established, and it was not contested, that the burglary of Milliron's residence occurred on December 18 not December 12. The context of the question supports the conclusion that it referred to the events after the burglary, and that is how we view it.

contends, have affected his cause favorably. The record indicates, however, that except for the erroneous reference in the exchange set forth above, she was not asked any question relating to her knowledge of the events of any date other than the day following the burglary, i.e. December 19, 1980. Thus, there is absolutely no indication on the record as to what her testimony would have been as it related to the plan to burglarize Milliron or the latter's putative denial that the coin sold was his. Again, without proof of what that evidence would have been we are unable to draw any conclusion as to whether it would have been helpful to his defense, or that the course of action not pursued by counsel offered a chance of success greater than that actually followed. *Stoyko, supra.*

With respect to that part of her testimony at the hearing relating to the conversation in the store, wherein she stated that she heard no mention that the coin being sold on December 19th was from the Milliron burglary, this would not have impeached the burglars' testimony at trial. Shannon had testified that he did not inform appellee at the time of the sale that the coin was part of the proceeds of the burglary, and Devore testified that he was unable to remember whether he had so informed appellee.

With respect to appellee's assertion that Ms. Morford would have testified that she, rather than appellee, wrote out the checks that were issued to Shannon and Devore, she testified at the hearing as to but one check: that which was given to the burglars in exchange for the coin and was recovered from them at the time of their arrests and introduced as a Commonwealth exhibit. However, appellee acknowledged at trial that the signature on that particular check was his own.

A check is a draft drawn on a bank and payable on demand. It is not negotiable unless signed by the maker or drawer. 13 Pa.C.S.A. §§ 3104(a)(1); (b)(2). Legally, appellee was the maker of the check by his own admission. In addition, the substance of the issue which might have been created by the introduction of Ms. Morford's testimony

related only to the charge of receiving stolen property. That issue was rendered moot by the trial court's grant of relief in the form of arrested judgment on appellee's conviction. Therefore, we conclude that appellee has failed to show that Morford's testimony would have been helpful to his cause to a sufficient degree that would require us to say that the decision not to call her lacked a reasonable basis.[5] *Wade, supra.*

Accordingly, the order of the Superior Court is reversed and the judgment of sentence of the Court of Common Pleas of Mercer County is reinstated.

ZAPPALA, J., files a concurring opinion.

NIX, C.J., concurs in the result.

ZAPPALA, Justice, concurring.

I concur in the result reached by the majority but write separately to enunciate my rationale. As the majority notes, and I concur, if the missing witnesses had testified at the evidentiary hearing as alleged, sufficient evidence would have been presented to establish a lack of any reasonable excuse why their testimony was not presented at the original trial. The lack of this favorable testimony would undoubtedly have prejudiced the appellee's case. Thus, if the missing witnesses had testified at the evidentiary hearing the appellee would have met his burden of proof with regard to a claim of ineffectiveness of trial counsel. However, Officer Sherbondy failed to appear at the evidentiary hearing and Lori Morford did not substantiate the favorable testimony alluded to by the appellee in his memorandum in support of a new trial. Accordingly, the appellee presented insufficient evidence to meet his burden. For this reason, I would reverse the Superior Court and rein-

**5.** Appellee also contended that Morford's proposed testimony concerning the check would have been of some value to his case since it called into question the credibility of the burglars. However, who filled in the payee line and sum certain on the check, and who physically handed it to the burglars were not material to the Commonwealth's proofs. Consequently, the value of such evidence would have been *de minimus* in its effect on their credibility.

338

state the judgment of sentence of the Court of Common Pleas.