584 A.2d 930

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Leonard R. TRESSLER, Appellant.**

Supreme Court of Pennsylvania.

Argued May 11, 1990.

Decided Dec. 31, 1990.

R. Bruce Manchester, Bellefonte, for appellant.

Ray Gricar, Dist. Atty., Mark S. Smith, Indiana, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

The appellant was convicted of rape[1], statutory rape[2], indecent assault[3] and corruption of a minor[4] following a one day jury trial in the Court of Common Pleas of Centre County. Post-trial motions were filed and denied by the court and the appellant was sentenced to an aggregate period of incarceration of from five (5) to ten (10) years. He then appealed his judgment of sentence to the Superior Court and during the pendency of that appeal requested a remand of his case to the Court of Common Pleas based upon after-discovered evidence. The case was remanded and a hearing was conducted for consideration of the after-discovered evidence which evidence consisted of the recantation of the trial testimony of the victim's sister. After this additional evidence was heard, the Court of Common Pleas reaffirmed its order of sentence dated July 16, 1984 and the case was returned to the Superior Court which affirmed 387 Pa.Super. 652, 559 A.2d 965. Thereafter the appellant was incarcerated at the State Correctional Institution at Rockview.

Subsequent to the Superior Court's affirmance the appellant dismissed trial counsel and secured the services of his present attorney to represent him in the filing of a P.C.H.A.[5] petition. During the course of representation the appellant informed counsel that he was approached by one of the alternate jurors who stated that several of the jurors, in the presence of all others, expressed their distaste for sex offenders, their feeling that he was guilty and their desire to conclude the matter promptly in order that they might return home. Present counsel, in a P.C.H.A. petition

1. 18 Pa.C.S.A. § 3121(1).
2. 18 Pa.C.S.A. § 3122.
3. 18 Pa.C.S.A. § 3126.
4. 18 Pa.C.S.A. § 6301(a).
5. The Post Conviction Hearing Act has been modified in part, repealed in part, and renamed the Post Conviction Relief Act. 42 Pa.C.S. §§ 9541–51.

filed with the Court of Common Pleas of Centre County on October 1, 1986, alleged that the appellant was denied his right to a trial by an impartial jury and that trial counsel was ineffective. The petition was denied by order dated April 28, 1989, without a hearing, and affirmed on appeal by the Superior Court which in a Memorandum Opinion, dated December 13, 1988, held that the appellant had waived the right to raise the issue of the impartiality of the jurors. Thereafter a timely application for reargument was filed with the Superior Court which denied reargument by order dated January 31, 1989. A petition for allowance of appeal was filed with this Court which was granted by order dated August 2, 1989.

The appellant argues that trial counsel was ineffective in failing to pursue, on appeal, the issue of the partialiaty of the jury after being informed of the appellant's post-trial conversation with the alternate juror and that such conversation conclusively establishes that he was denied a fair trial by an impartial jury as required under the United States and Pennsylvania constitutions. Additionally he asserts that trial counsel's ineffectiveness in that regard constitutes an extraordinary circumstance which should not act as bar to Post–Conviction relief and that the denial of his petition by the P.C.H.A. court without the holding of an evidentiary hearing was error.

█ With regard to his allegation of trial counsel's ineffectiveness the test is well settled. First we must determine whether the underlying claim is of arguable merit. *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980). If the claim is devoid of merit, our inquiry ceases for counsel will not be deemed ineffective for failing to pursue a meritless issue. *Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728 (1987). If, however, the claim possesses merit, we must then determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Hentosh,* 520 Pa. 325, 554 A.2d 20 (1989). Finally, appellant must demonstrate how the ineffectiveness prejudiced him.

*Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). With these standards in mind we will now examine the appellant's claim that trial counsel's representation was deficient.

The record reveals that one to two months after he was convicted the appellant was approached by a Beatrice Butler, an alternate juror who was selected to hear the appellant's case. She informed him that two to three of the male jurors had expressed opinions as to the appellant's guilt prior to being sworn. A recording of her recollection of the conversations she overheard was made by present counsel on March 10, 1986, slightly more than two years after the conclusion of appellant's trial. In relevant part her recollection of those utterances is as follows:

RBM: ... Now, I understand, Beatrice, that you were an alternate juror that was selected to hear the case of Leonard Tressler. Is that correct?

Beatrice: Yes.

RBM: Could you please tell me what you said to Leonard and when you told him?

Beatrice: Only that I just couldn't understand why people would, could make a decision before a trial started and when they said they were, it was going to be a shut and closed case, that, uh, they were going to find him guilty so that they could get out of there. And I just couldn't understand that, maybe I should have reported it at the time, I don't know, if I'm wrong, I'm sorry.

\* \* \* \* \* \*

RBM: ... Now can you remember specifically what you heard before the trial started and try to give me an indication as to how that came about?

Beatrice: Uh, to begin with, there was a couple people late and they, there was a couple there that wanted to hurry up and get it over with, they wanted to do it even though, go ahead with the case, get started before they got there since they already had two alternates and because they had to get back to work and that so it was

144

going to be shut and closed case anyways because he had no business doing that.

\* \* \* \* \* \*

RBM: ... This conversation took place in the jury room after the jury was placed in the room as a body before the trial started is that correct?

Beatrice: Yes, before the trial started.

R. 239–246.

Appellant argues that the above transcript firmly establishes that he was denied the right to a fair trial by an impartial jury as set forth under the Sixth Amendment to the United States Constitution and under Article I Section 9 of the Pennsylvania Constitution. In support he argues that the decision of this Court in *Commonwealth v. Kerpan*, 508 Pa. 418, 498 A.2d 829 (1985) is controlling. For the following reasons we do not agree.

In *Kerpan* after the jurors were sworn the trial judge encouraged the jurors to experiment by holding discussions among themselves about questions they might have during the course of trial. This practice, we determined, violated the defendant's right to an impartial jury for the reasons that: 1) since the prosecution's evidence is presented first, any initial opinions formed by the jurors are likely to be unfavorable to the defendant, and there is a tendency for a juror to pay greater attention to evidence that confirms his initial opinion; 2) once a juror declares himself before his fellow jurors he is likely to stand by his opinion even if contradicted by subsequent evidence; 3) the defendant is entitled to have his case considered by the jury as a whole, not by separate groups or cliques that might be formed with the jury prior to the conclusion of the case; 4) jurors might form premature conclusions without having had the benefit of the court's instructions concerning what law they are to apply to the facts of the case; 5) jurors might form premature conclusions without having heard the final arguments of both sides. *Id.*, 508 Pa. at 422, 423, 498 A.2d at 831–832.

In the instant matter the factual setting is distinguishable from that in *Kerpan*. Here the conversations occurred not after but rather before the jurors were sworn, before any evidence was received and before any jury instructions were given by the trial judge. That several jurors voiced their distaste for crimes of the nature in issue, their desire to conclude the matter with all due haste and their initial belief that the appellant was perhaps guilty, are not factors which constitute a denial *per se* of a fair trial by an impartial jury. On this point the opinion of the United States Supreme Court in *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), is instructive. There the Court stated in relevant part:

> To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Id.* at 723–724, 81 S.Ct. at 1642–43.[6]

In this vein the trial court instructed the jurors, after being sworn, that they were to "keep an open mind throughout the trial" and that their duty was to be "the kind of juror that if you were vitally interested in the outcome of this case, you'd want someone like yourself to be a juror". (R. 17–21). Since the record is devoid of any indication that the jurors who served were incapable of laying aside any preconceived impressions or opinions that they might have held prior to hearing the evidence presented and being sworn or further, that the instructions given

---

**6.** This Court in similar fashion has stated that the Constitutional mandate of a fair and impartial jury does not require that prospective jurors be free from all knowledge of facts and circumstances surrounding the incident which forms the basis of the trial and, thus, the critical question ... is whether or not they are capable of casting aside any impressions or opinions they may have formed and rendering a verdict based solely upon the evidence presented to them during the course of the trial. *Commonwealth v. Hoss*, 469 Pa. 195, 200–201, 364 A.2d 1335, 1338 (1976).

to the jury after being sworn, failed to impress upon them the importance of the task at hand or the significance of each of their separate votes, we must conclude that the appellant's assertion that he was denied a fair trial is a bald assertion and without merit [7].

■ Having determined that the appellant's underlying claim is without merit, further inquiry into the effectiveness of counsel is unnecessary as is a resolution of his remaining issues. We do note as an aside that trial counsel did attempt to secure a new trial for the appellant after the victim's sister recanted her trial testimony. Faced with the dilemma of either attempting to seek a new trial based upon a subsequent recantation of testimony or the pursuit of a new trial through the discovery of innate bias and prejudice possessed by several jurors, we are not prepared to say that the avenue chosen by trial counsel, though unsuccessful, was unreasonable or not made with the best interest of his client in mind.

Accordingly, the order of the Superior Court is affirmed.

ZAPPALA and CAPPY, JJ., file dissenting Opinions.

ZAPPALA, Justice, dissenting.

Because I disagree with the majority's attempt to retreat from the impartial jury provision set forth in Article I, Section 9 of our State Constitution, I dissent.

Under Article I, Section 9 of our State Constitution, an accused in a criminal proceeding has the absolute right to have his fate decided by an impartial jury. This does not mean that prospective jurors can have no knowledge of the facts and circumstances surrounding the incident which forms the basis of the trial, but rather, Article I, Section 9 guarantees that those prospective jurors will render a verdict solely based upon the evidence heard during the trial.

7. The record also reveals that the jury was polled at the conclusion of the trial and that each juror without hesitation reaffirmed the verdict of appellant's guilt in open court.

*Commonwealth v. Brantner,* 486 Pa. 518, 406 A.2d 1011 (1979).

In response to the Appellant's argument that he was denied effective assistance of counsel by his trial counsel's failure to pursue the issue of the jury's partiality on appeal, the majority relies heavily upon the trial court's introductory instructions to the jury prior to the commencement of the trial. By instructing the jurors to "keep an open mind throughout the trial" and that their duty was to be "the kind of juror that if you were vitally interested in the outcome of this case, you'd want someone like yourself to be a juror," the majority concludes that any prejudice from preconceived impressions or opinions has been vitiated. Finally, the majority concludes that any reliance upon our decision in *Commonwealth v. Kerpan,* 508 Pa. 418, 498 A.2d 829 (1985) is misplaced.

As the majority states in *Commonwealth v. Kerpan,* we outlined five reasons for prohibiting premature jury discussions. The underpining of all of these factors is an attempt to prevent a juror from reaching a judgment about a case without first hearing all the evidence. It is for this reason that we permit peremptory challenges and challenges for cause. Pa.R.Cr.P. 1106. In the later case, a judge makes a determination that some response has been given which demonstrates a prospective juror's inability to determine the case to be heard on the record to be made, *Commonwealth v. Ingber,* 516 Pa. 2, 531 A.2d 1101 (1987) and *Commonwealth v. Johnson,* 299 Pa.Super. 172, 445 A.2d 509 (1982), while in the former instance, the attorney, rather than a judge, seriously questions a prospective juror's objectivity.

Contrary to the majority's conclusion, this is not a case of a prospective juror having preconceived notions and the ability to lay those notions aside to render a verdict on the evidence presented. See Opinion p. 145–146. Here the jurors *emphatically* expressed their opinion that Appellant *was* guilty and that it was an "open and shut case." I am hard pressed to conclude in this instance as the majority has

that the jurors' statements reflect a lack of predetermination of guilt and an ability to set aside these preconceived impressions and opinions.

If these statements had been made during the voir dire process, there can be little doubt that these prospective jurors would have been dismissed for cause.[1] To rule otherwise, would certainly have resulted in palpable error on the part of the trial judge. As such, it should make no difference that the jurors' preconceived notions were not discovered until after the trial. The critical factor is not the lack of discovery, but rather the lack of impartiality and the effect of that lack of impartiality.

In its zest to affirm the actions of the lower courts, the majority parenthetically concludes that even if Appellant's underlying claim of ineffectiveness had merit, the strategy chosen by trial counsel in pursuing a new trial on the basis of recantation of a witness's testimony rather than the juror's impartiality, though unsuccessful, was reasonable. Unfortunately, the majority reaches its conclusion without the benefit of any testimony from trial counsel explaining his reasoning for not pursuing the impartiality issue. Without trial counsel's insight, the majority's reasoning is based upon mere speculation and conjecture and thus flawed.

Finally, the majority points to the record and the results of the poll of the jury at the conclusion of the trial to support its determination that the jury was impartial. I fail to see how each juror's declaration of guilt vitiates prejudice to the Appellant when several of the jurors had preliminarily indicated their final verdict.

Thus, I agree with the majority's holding that our State Constitution does not require that prospective jurors be free from all knowledge of the incident. However, I read our Constitution as requiring that prospective jurors not be predisposed. Since it is arguable that several jurors were

---

1. In *Commonwealth v. Ingber,* supra, we expressed doubt as to the partiality of a juror who indicated that he could not be impartial because a defendant was charged with terroristic threats. Here we have a more definitive instance in which jurors expressed certainty as to the ultimate culpability of a defendant.

predisposed and trial counsel failed to pursue that issue, I would find that the lower court erred in dismissing the Appellant's Post–Conviction Hearing Act Petition without a hearing and would remand this matter to the Court of Common Pleas for the development of a full record.

CAPPY, Justice, dissenting.

The majority of this court has held that trial counsel was not ineffective in the instant case for failing to pursue, on appeal, the issue of partiality of the certain members of the jury after being informed by an alternate juror about conversations she overheard by members of the jury concerning their belief as to the guilt of the defendant. I must respectfully disagree with the majority.

In the case of *Commonwealth v. Kerpan*, 508 Pa. 418, 498 A.2d 829 (1985) we held:

First, since the prosecution's evidence is presented first, any initial opinion formed by the jurors are likely to be unfavorable to the defendant, and there is a tendency for a juror to pay greater attention to evidence that confirms his initial opinion. [cites omitted] Second, once a juror declares himself before his fellow jurors he is likely to stand by his opinion even if contradicted by subsequent evidence. [cite omitted] Third, the defendant is entitled to have his case considered by the jury as a whole, not by separate groups or cliques that might be formed within the jury prior to the conclusion of the case. [cite omitted] Fourth, jurors might form premature conclusions without having had the benefit of the court's instructions concerning what law they are to apply to the facts of the case. [cite omitted] Fifth, jurors might form premature conclusions without having heard the final arguments of both sides. [cites omitted].

In that well crafted and well reasoned analysis, Mr. Justice McDermott articulated the reasons why we regard with such concern jurors who form opinions and state them *before* the time when they are charged with the duty to deliberate.

In his brief in the case *sub judice,* the appellant alleges the following:

He was informed by her [Beatrice Butler, an alternate juror] that two of (sic) three of the jurors, shortly after their arrival in the jury room on the morning of the trial, in the presence of all the jurors, including the alternate juror, state that they did not like sex offenders. They stated that they were going to vote for the conviction of Mr. Tressler and that they wanted the trial to be concluded in a short period of time so that they could go home.

In the reproduced record, the appellant sets forth the transcribed telephone conversation counsel for the appellant had with Ms. Butler. Among the statements that Ms. Butler made, the following are pertinent:

Only that I just couldn't understand why people would could make a decision before a trial started and when they said they were, it was going to be a shut and closed case, *that uh they were going to find him guilty so that they could get out of there.*

Uh, to begin with, there was a couple people late and they, there was a couple there that wanted to hurry up and get it over with, they wanted to do it even though, go ahead with the case, get started before they got there since they already had two alternates and because they had to get back to work and that *so it was going to be shut and closed case anyways because he had no business doing that.* (emphasis supplied).

I believe that this unequivocal expression by certain jurors as to the guilt of the defendant—prior to the commencement of the evidence—mandates a hearing on the matter. I do not agree that the fact that these conversations ostensibly occurred *before* the jury was sworn requires a different result. The concerns we voiced in *Kerpan* are just as pertinent in this case. If we countenance such behavior by the jury, we do violence to the notion of impartial juries; the cornerstone of our constitutional jurisprudence. We should not and must not cavalierly dismiss such statements as unimportant because they are suscepti-

ble of being curable by instruction. It ignores both the law and the sanctity of jury trial to do so. Additionally, it should be remembered that these jurors had, prior to making these statements, answered *voir dire* questions under oath to ascertain that they could be fair and impartial in the case.

Furthermore, I take exception to the majority's statement [t]hat several jurors voiced their distaste for crimes of the nature in issue, their desire to conclude the matter with all due haste and their initial belief that the appellant was *perhaps* guilty, are not factors which constitute a denial *per se* of a fair trial by an impartial jury. (emphasis supplied).

This interpretation of the statements in the record is much too mild. "It was going to be a shut and closed case and they were going to find him guilty" is not coterminous with "their initial belief that the appellant was perhaps guilty."

Based on the record before us, I am constrained to find that the unequivocal expression of the appellant's guilt requires a hearing to determine whether there is sufficient reason to warrant a new trial. To find otherwise is to ignore the plain meaning of the words of Ms. Butler and the precedent we established in *Kerpan.*

In addition to finding that the underlying claim for ineffectiveness has merit, I must also disagree with the majority that trial counsel was

[f]aced with the dilemma of either attempting to seek a new trial based upon a subsequent recantation of testimony or the pursuit of a new trial through the discovery of innate bias and prejudice possessed by several jurors, we are not prepared to say that the avenue chosen by trial counsel, though unsuccessful, was unreasonable or not made with the best interest of his client in mind.

I do not believe that there was any "dilemma" faced by trial counsel. There was no reason that I can discern that trial counsel could not have pursued both of these avenues.

Thus, because I believe that the course of action chosen by counsel had no reasonable basis designed to effectuate his client's interest, *Commonwealth v. Hentosh*, 520 Pa 325, 554 A.2d 20 (1989), I would find that trial counsel's actions were ineffective.

Accordingly, I would remand this case to the trial court for a full hearing on the claim that certain jurors expressed their opinion as to the guilt of the appellant. I dissent.