628 A.2d 1141

**COMMONWEALTH of Pennsylvania**

v.

**William MASON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1992.

Filed May 28, 1993.

Reargument Denied Aug. 5, 1993.

---

Peter C. Bowers, Philadelphia, for appellant.

Stephen B. Harris, Asst. Dist. Atty., Warrington, for Com., appellee.

Before CAVANAUGH, BECK and POPOVICH, JJ.

CAVANAUGH, Judge.

This appeal is from a judgment of sentence imposed after a jury found appellant guilty of various drug offenses, weapons

violations, and bribery. Appellant, William Mason, was arrested in the parking lot of a 7–11 store in Bensalem, Bucks County, after police, who suspected him of possessing drugs in his van, determined that he had an outstanding traffic arrest warrant and that his license was suspended. After Mason was in custody, he attempted to secure a break for himself by offering money and drugs to the arresting officers in return for his immediate release. Mason directed the officers to the spot in his van where the illegal drugs were, however, they did not accept them as proffered by Mason. Rather, they seized the contraband, and used it as the basis upon which to charge Mason with violations of the Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101 *et seq.* Also seized from the van were a hand grenade and .44 caliber Magnum gun.

On appeal, Mason challenges the rulings of the suppression court and alleges several instances of ineffectiveness on the part of trial counsel. We have analyzed all these issues and, upon consideration of the record and briefs, find them to be without merit.

The lower court's opinion, as supported by the evidence of record, accurately recounts the circumstances surrounding the investigation and arrest of appellant:

At approximately 10:55 p.m. on August 2, 1990, Bensalem Township Police Officer Christopher Barry was on patrol and received a radio transmission which provided the officer with descriptions of "two suspicious vehicles possibly involved in drug activity" at building "D" of the Hillbrook Apartments, located at Knights Road and Dunksferry Road in Bensalem Township, Bucks County. The first vehicle was described as a black Chevrolet van, Pennsylvania registration number UXW340, and the second as a silver Ford automobile, Pennsylvania registration number UUL024.

When Officer Barry arrived at the apartment complex, he identified the black Chevrolet van but not the silver automobile. The van was unoccupied and was illegally parked. A briefcase was situated between the van's two front seats. Officer Barry checked the registration of the van by police

radio and was told that the van was registered to William and Karen Mason. The officer remained by the van for about ten minutes, and when the van's driver did not return he ticketed the illegally parked vehicle and left the apartment complex.

Officer Barry was familiar with both William Mason and the van registered to Mr. Mason before he received the August 2, 1990 radio transmission. While assigned to the narcotics division of the Bensalem Township Police Department from March 1989 to January 1990, and in the months since January of 1990, Officer Barry had received reports from various informants about an alleged Bensalem area cocaine dealer named William Mason, also known as "Hillbilly", who was known to drive a black van and sell cocaine at the Petticoat Junction Bar.

Officer Barry was also aware that on March 31, 1990, Officer Robert Gorman personally observed the defendant sell an informant cocaine inside of the defendant's van at building "D" of the Hillbrook Apartments. Officer Gorman was in an unmarked car approximately 50 to 60 feet from the van when he saw the informant enter the defendant's van, and saw the defendant take a glassine baggie from a briefcase and hand the informant the baggie in exchange for cash. Laboratory analysis confirmed that the substance in the bag was cocaine.

In addition to the already recited incidents, Officer Barry was also aware at the time of the August 2, 1990 radio broadcast that the defendant had a suspended driver's license and an outstanding traffic warrant. Officer Barry had checked the status of the defendant's driver's license in late March or early April 1990 following the already noted drug purchase observed by Officer Gorman, and found that the defendant's license was suspended. At the time of the August 2, 1990 radio call, Officer Barry had with him a current list, issued on July 6, 1990 of those persons with outstanding traffic warrants from District Justice Ritter's District Court. The defendant's name was on that list; *see*

250

*also* the warrant list, Exhibit "A", admitted into evidence at trial.

At 11:29 p.m., a few minutes after leaving the Hillbrook Apartment parking lot, Officer Barry received a second radio call advising him that the black Chevrolet van had subsequently been seen at a 7–11 convenience store located about a mile away at the intersection of Hulmeville Avenue and Park Avenue, Bensalem Township, Bucks County. Officer Barry drove to the convenience store where he observed the defendant who was seated inside the van and was talking to someone outside the van. Officer Barry turned his car around and as he was doing so, the van began to back out of its parking space. Officer Barry stopped the van and got out of his police car. As he approached the van, he noticed the defendant appeared "very, very nervous, shaky, he was sweating profusely and appeared ... to be overly friendly."

Officer Barry introduced himself within a few feet of the van, and told the defendant that he was investigating a radio call which reported the defendant's van as being involved in possible narcotics activity at the Hillbrook Apartments. The defendant introduced himself as "Hillbilly", and said that he was delivering pizza at the Hillbrook Apartments for a local pizza shop, Bella Pizza. Officer Barry asked the defendant for some identification and whether he had a valid driver's license. The defendant said that his name was William Mason and, according to the officer's recollection, at the time the defendant said that he did in fact have a valid driver's license. However, at the suppression hearing the defendant testified that when he was asked about his driver's license he immediately told the officer that his license was suspended. At some point during the conversation, Officer Barry smelled an odor associated with methamphetamine in the area of the van.

Officer Barry then went to his patrol car to check, via police radio, whether the defendant had a valid driver's license and whether he still had an active traffic warrant. The defendant was left unattended and went into the conve-

nience store. Police headquarters confirmed that the defendant's driver's license was suspended and that the defendant still had an outstanding warrant from district court. When the defendant came out of the 7–11, Officer Barry asked him about the traffic warrant. Mr. Mason said that there had been a warrant from Justice Ritter's District Court, but that he had paid the fine on the warrant that morning. Officer Barry asked the defendant whether he had a receipt for the payment and the defendant said he did not. The defendant testified at the suppression hearing that he did have an outstanding warrant when Officer Barry stopped him, and that he "lied" to the officer about having paid the fine that morning "because he was worried". The defendant did not articulate his worries with any particularity.

Officer Robert Gorman was also at the convenience store on duty pursuing an unrelated matter. The two officers discussed the situation, and Officer Gorman confirmed that the defendant was the person whom he had seen sell cocaine at the Hillbrook Apartments on March 31, 1990 and that the van was the same vehicle in which the sale was made. The two officers approached Mr. Mason and the van. As they did so, Officer Gorman without having been told of the smell by Officer Barry, noticed an odor of methamphetamine coming from the van.

Officer Barry then asked the defendant if the officers could search the van. The defendant told them he did not want them to search the van because he had "girlie magazines" in it. Officer Barry told him that he was not interested in any magazines and that he thought that there were narcotics in the van.

At that point, the defendant started to back away from the officers and said, "Please don't do this I'm trying to get out of it." The suppression court found this statement to be a reference to drug trafficking. The officers believed that the defendant might attempt to flee and so the defendant was arrested for the summary warrant, pat searched and handcuffed. The defendant was not questioned during

these arrest procedures. As Officer Barry began to walk the defendant away from the van and toward the patrol car, the defendant initiated conversation with Officer Barry by saying that he would give the officer all of the money and drugs he had on him if Officer Barry would let him go.

In order to have some corroboration for the defendant's statement, Officer Barry asked Officer Gorman to step over to the patrol car. After Officer Gorman did so, Officer Barry asked the defendant if he had heard the defendant correctly, to the effect that if the officers let the defendant go, they could keep the money and the drugs. The defendant responded, "yes". Officer Barry then asked the defendant about what quantity and type of drugs they were talking about and the defendant said about an ounce of cocaine.

The defendant was then placed in the back seat of the patrol car, at which time he told the officers that he would get the cocaine for them from the van. While still in handcuffs, the defendant was taken out of the police car and walked to the van. The defendant said that the drugs were under a clipboard located between the two front seats. Officer Barry then for the first time entered the van and found a pouch under the clipboard which contained 48.16 grams or 1–2/3 ounces of cocaine, a digital scale, a sifter with cocaine residue, 1.28 grams of marijuana, 3 tablets of diazepam, 2–1/2 tablets of alprazolam, a quantity of methamphetamine and other paraphernalia.

The defendant was then transported to Bensalem Police Headquarters where he was searched and given his *Miranda* warnings. After being informed of these rights, and signing a release, the defendant provided the police with a statement in which he said among other things that he had been selling cocaine for about a year and at one point had more than fifty customers, and that he was about to sell the cocaine found in his van at a bar in Philadelphia known as Purgatory's.

The defendant's van was seized following the defendant's arrest, and a search of the van uncovered a .44 caliber

Magnum revolver loaded with six hollow point bullets behind a cushion on the driver's seat as well as an explosive device which had to be detonated by the Philadelphia Bomb Squad.

Lower Court Opinion, March 17, 1992 at 1–8 (page citations omitted.)

We observe that appellant testified at trial and admitted that the physical evidence consisting of drugs and weapons were discovered by the police in his van. He disputed, as he had at the suppression hearing, that he had consented to the search.

■ The first four issues presented by appellant relate to the denial of his motion to suppress statements and physical evidence. The standard of review of the denial of a suppression motion is as follows:

In reviewing a trial court's denial of a motion to suppress, the appellate court's responsibility is to determine whether the record supports the factual findings of the suppression court and the legitimacy of the inferences and legal conclusions drawn from those findings. *Commonwealth v. Hughes,* 521 Pa. 423, 438, 555 A.2d 1264, 1271 (1989). In making this determination, we will consider the evidence of the prosecution's witnesses and so much of the evidence of the defense as, read in the context of the record as a whole, remains uncontradicted. *Id.,* 521 Pa. at 438, 555 A.2d at 1271–72 (**quoting** *Commonwealth v. Kichline,* 468 Pa. 265, 280–81, 361 A.2d 282, 290 (1976)).

*Commonwealth v. Brundidge,* —— Pa. ——, —— – ——, 620 A.2d 1115, 1116 (1993).

■ The first issue is whether the investigation conducted by Officers Barry and Gorman exceeded the permissible scope of their authority to act upon the outstanding traffic warrant. Mason contends that the officers did not have an articulable basis to believe that further criminal activity was afoot, and, therefore, the search of the van was overextensive.

Appellant does not dispute that at the time Officer Barry approached him in the 7–11 parking lot there existed a current

warrant for his arrest (relating to traffic offenses) and that his license was under suspension. He concedes that Officer Barry could legitimately arrest him on this basis. Mason argues that no other elements were present that would support the search of the van.

■■■■ Where the driver of a vehicle is arrested pursuant to a warrant, the validity of a warrantless search of the automobile depends upon the officer's reasonable belief, i.e., probable cause, that its contents offend the law. The right to arrest alone does not determine the permissibility of the search. *See Commonwealth v. Germann*, 423 Pa.Super. 393, 397–400, 621 A.2d 589, 591–592 (1993); *Commonwealth v. Parker*, 422 Pa.Super. 393, 399–401, 619 A.2d 735, 738 (1993); *Commonwealth v. Bailey*, 376 Pa.Super. 291, 545 A.2d 942 (1988).

We find that there were sufficient elements present to cause Officers Barry and Gorman to have probable cause to believe that the van was being used in furtherance of a felony and that it contained contraband. The facts relevant to the determination of probable cause included: the previous radio call that evening to Officer Barry to investigate suspicious drug activity involving Mason's van; Mason's nervous demeanor when Officer Barry approached his van at the 7–11 store; Mason's untruthful answers to Officer Barry's inquiries concerning the traffic arrest warrant, payment of fines, and the status of Mason's driver's license; and the officer's smelling methamphetamine odor from the van. These factors alone, without considering the dated information of Mason's previous drug sales and his disputed consent to search, establish that the police had probable cause to believe that criminal activity was afoot. *See Bailey, supra,* where the odor of a "chemical-type" smell combined with an officer's observance of a clear plastic bag containing a white substance was probable cause to search the entire vehicle. *Compare Commonwealth v. Parker, supra,* where a consensual search conducted after a valid traffic stop was found to be beyond the permissible scope of the stop. In *Parker,* the accused was cited for driving without a license, however, there existed no other objective circum-

stances to support a suspicion that drugs or other contraband were hidden in the vehicle.

Appellant cites the recent case *Commonwealth v. Lopez,* 415 Pa.Super. 252, 609 A.2d 177 (1992), for the proposition that absent reasonable grounds to suspect illegal activity, a warrantless search of a vehicle may not be conducted pursuant to a lawful traffic stop. In *Lopez,* this court held that a driver's consent to search his car and towed vehicle was tainted by the illegal detention. The driver in *Lopez* was in violation of the traffic code because he had failed to cross the tow chains. No other irregularities or other objective factors were present to justify the police officer's continued detention of the driver or his request for consent to search.

The situation in *Lopez* differs markedly from the one in the instant case. Here, the police officers were in possession of information that appellant's van was involved in suspicious drug activity some one-half hour before the stop. They smelled methamphetamine odor coming from the inside of the van. The appellant gave them false information concerning his driving status and his payment of traffic fines. These circumstances provided the officers with probable cause to believe that controlled substances would be discovered in the van.

Because Officer Barry had probable cause to arrest Mason when he prevented Mason from driving out of the 7–11 parking lot, based upon the officer's knowledge of the outstanding warrant and the suspended status of Mason's driver's license, recent cases suppressing evidence because of lack of reasonable suspicion or probable cause of a traffic violation are not applicable to analysis of this case. *Cf., Commonwealth v. DeWitt,* 530 Pa. 299, 608 A.2d 1030 (1992) and *Commonwealth v. Whitmyer,* 415 Pa.Super. 393, 609 A.2d 809 (1992). *DeWitt* and *Whitmyer* pertain to a determination of the legality of a motor vehicle stop. In the instant case, the focus of the inquiry is the propriety of the search after a stop based upon an outstanding traffic warrant. Having determined that there existed an adequate basis upon which the officers had

probable cause to believe that evidence of a crime was contained in the van, we find that appellant's first issue is without merit.

The second issue is whether Mason's consent to search the van was obtained through coercion and duress. Given our finding that there was probable cause to search the van, this issue need not be discussed at length. In the interest of judicial economy and since the question of consent was raised before and addressed by the lower court, we will treat this issue. Voluntariness of consent is a question of fact to be determined from all the circumstances. *Commonwealth v. Slaton*, 530 Pa. 207, 608 A.2d 5 (1992).

Appellant argues that the arrest was used as a tool to obtain his consent to search his van. He bases this argument upon the sequence of events where the officers first asked for consent to search, this was declined, appellant was arrested on the traffic warrant, and the officers again asked for consent to search. Missing, however, from appellant's rendition is the offer by appellant to give the officers his drugs and money if they let him go and his offer to show them the drugs in the van. The suppression court accepted the testimony of Officer Barry that Mason suggested to the officers that he show them the drugs and that he described their location in the van. The court found as fact, and the record supports, that the officers made no threats or promises to Mason. The facts of this case outline more an offer to produce the drugs than a consent to search for them.

Mason was under arrest and he had not been informed of his *Miranda* rights when he consented to the search. These are factors to consider when determining coercion. *See Commonwealth v. Elliott*, 376 Pa.Super. 536, 546 A.2d 654 (1988). He had been told that Officer Barry believed there was enough information to present to a magistrate to obtain a, search warrant. It was at this point Mason attempted to negotiate his release by offering the officers drugs and money. Based upon all the circumstances, we find that appellant's consent to the search was voluntary.

■ The next issue is whether Mason's statements made before he was advised of his *Miranda* rights should have been suppressed. Mason was advised of his *Miranda* rights after he arrived at the police station. While he was at the scene at the 7–11 parking lot he was not warned of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He claims that he was subject to custodial interrogation in the parking lot and in the patrol car.

The lower court found that statements made by Mason at the scene were made either before he was in custody or not in response to interrogation. In his brief, Mason argues that since he was the focus of an investigation, i.e., suspected drug dealing, he was entitled to *Miranda* warnings. This "focus of investigation" criteria was disavowed by the supreme court in *Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985) (plurality). Being the focus of an investigation does not mean that one is necessarily subject to custodial interrogation. Appellant also argues that because the officers made it clear to him from the start that they were investigating suspicions of drug activity, this was not an ordinary traffic stop, and that the leeway given officers to question drivers at traffic stops is not applicable. *Commonwealth v. Meyer,* 488 Pa. 297, 412 A.2d 517 (1980).

We find that upon review of the record, the conclusion of the lower court that Mason was not in custody prior to his formal arrest is supported by the evidence. "The test for determining whether or not a person is in custody for *Miranda* purposes is whether he '. . . is physically deprived of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by such interrogation . . .' " *Commonwealth v. Medley,* 531 Pa. 279, 612 A.2d 430 (1992) (citations omitted). Here, Officer Barry parked his vehicle behind Mason's van. He approached Mason and told him he was investigating a recently received report of suspicious drug activity at the Hillbrook Apartments. He then asked for consent to search. Upon being denied, Officer Barry decided to arrest Mason for the motor vehicle offenses. Until the

formal arrest, appellant was not in custody. Mason went into the 7–11 store unescorted while Officer Barry was outside at his patrol car. We find that nothing said during this period was subject to suppression because appellant could not reasonably conclude that he was deprived of his freedom of action in any significant way.

After he was arrested, appellant volunteered to give drugs and money in return for release. The lower court found that he did this not in response to interrogation from the police. The record supports this finding based upon Officer Barry's testimony. It was appellant who initiated the conversation after his arrest. Therefore, *Miranda* warnings were not required to be given. *Commonwealth v. Odrick,* 410 Pa.Super. 245, 599 A.2d 974 (1991).

As a final issue relating to suppression, appellant argues that there was no probable cause to search the van. We have already concluded that probable cause to search did exist, and there is no need to reiterate that discussion.

The final issue raised on appeal is whether trial counsel failed to render effective assistance.[1] Appellant cites counsel's failure to call certain fact and character witnesses, failure to seek sequestration, conflict of interest, and failure to raise and preserve all suppression issues.

The supreme court has recently articulated the standard to be applied to claims of ineffective assistance of counsel as follows:

First, we must determine whether the underlying claim is of arguable merit. *Commonwealth v. Evans,* 489 Pa. 85, 413 A.2d 1025 (1980). If the claim is devoid of merit, our inquiry ceases for counsel will not be deemed ineffective for failing to pursue a meritless issue. *Commonwealth v. Nelson,* 514 Pa. 262, 523 A.2d 728 (1987). If, however, the claim possesses merit, we must then determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interest. *Commonwealth v. Hentosh,* 520 Pa. 325, 554 A.2d 20 (1989). Finally,

1. New counsel represents Mason on appeal.

appellant must demonstrate how the ineffectiveness prejudiced him. *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987).

*Commonwealth v. Tressler,* 526 Pa. 139, 142, 584 A.2d 930, 931–932 (1990). Thus, the mere allegation that trial counsel pursued a wrong course of action will not make out a finding of ineffectiveness.

*Commonwealth v. Savage,* 529 Pa. 108, 112, 602 A.2d 309, 311 (1992).

▇ We will not consider claims of ineffective assistance of counsel in a vacuum. *Commonwealth v. Pettus,* 492 Pa. 558, 563, 424 A.2d 1332, 1335 (1981); *Commonwealth v. Murphy,* 527 Pa. 309, 314 n. 2, 591 A.2d 278, 280 n. 2 (1991); *Commonwealth v. Ingram,* 404 Pa.Super. 560, 578, 591 A.2d 734, 742 (1991).

▇ Attached to appellant's brief are letters from eight people pertaining to his nickname and his character. First, appellant contends that trial counsel should have called a Nina Bencardino. However, the only reference to Ms. Bencardino is in the statement of appellant's wife, Karen Mason. This hearsay statement is not a sufficient showing of the potential testimony of Ms. Bencardino. Therefore, appellant has not made an adequate proffer of the proposed testimony of this person. *See Commonwealth v. Hentosh,* 520 Pa. 325, 554 A.2d 20 (1987).

▇ Regarding the persons whose letters are attached to appellant's brief, the following standard is applicable:

In order to successfully set forth a claim of ineffectiveness of counsel for failure to call or investigate a potential witness, an appellant must establish four essential points of information. First, he must identify the alleged witnesses. Second, he must demonstrate defense counsel knew of the existence of those witnesses prior to the time of trial. Third, he must demonstrate the witnesses would have provided material evidence at the time of trial. And fourth, the appellant must establish the manner in which the witnesses would have been helpful to his case. *Commonwealth v. Weinder,* 395 Pa.Super. 608, 577 A.2d 1364 (1990). Where it

is clear that the allegations against defense counsel are baseless or without merit an evidentiary hearing is unnecessary. *See Commonwealth v. Egan,* 335 Pa.Super. 474, 484 A.2d 802 (1984).

*Commonwealth v. Phillips,* 411 Pa.Super. 329, 346, 601 A.2d 816, 824 (1992).

■ Several of the letters state, that to the author's knowledge, appellant's nickname was Wild Bill and not Hillbilly, as testified to at trial by the police officers. However, appellant himself admitted on the stand that for a time his nickname was Hillbilly. Appellant, therefore, has not shown that this proposed testimony would have been helpful to his case since it would have contradicted his own sworn testimony.

■ As to the references to appellant's character, the Commonwealth points out in its brief that most of the letters do not present facts relevant to appellant's reputation in the community. Personal opinions regarding an accused's character are not admissible as reputation and character evidence. *Commonwealth v. Rue,* 362 Pa.Super. 470, 524 A.2d 973 (1987). Although reputation evidence alone may create a reasonable doubt as to guilt, *see Commonwealth v. Neely,* 522 Pa. 236, 561 A.2d 1 (1989), mere expressions of a witness' personal opinion are not probative of reputation.

■ The two letters which refer to reputation state, "Bill is known too [sic] many people as a good law-abiding person," John F. Hughes (father-in-law) and, "Billy ... has also been known by many people to be a good person," Angelina Sherwood (mother). Appellant has not proffered evidence that trial counsel knew of these persons at the time of trial. Further, we are unable to conclude that appellant was prejudiced by the absence of this testimony. Appellant admitted at trial that he possessed all the drugs introduced as evidence and that he intended to sell at least a portion of the cocaine at a bar in Philadelphia. We find that the presumption of effectiveness has not been overcome.

■ Appellant's cursory allegation of ineffectiveness for failure to seek sequestration of Commonwealth witnesses con-

stitutes a claim that is presented in a vacuum. None of the testimony is identified as being molded or influenced by the testimony of other witnesses. No showing of prejudice by lack of sequestration has been made.

The next issue alleges that trial counsel may have suffered from an actual conflict of interest because he represented Ms. Bencardino, the alleged confidential informant, in a prior child custody case. Appellant posits that since trial counsel did not call Bencardino at the suppression hearing to contradict the testimony of Officers Barry and Gorman, a showing of actual conflict existed. Conspicuously absent from any portion of the material presented to this court by appellant is any document authored by Bencardino in which she supports any of the allegations or representations made by appellant. This dearth of proof requires a conclusion that appellant has failed to sustain his burden to prove trial counsel's ineffectiveness.

Finally, we find that trial counsel adequately raised and preserved all grounds for suppression of evidence. We have reviewed these issues on their merits as presented on appeal, and there is no arguable merit to the claim that trial counsel's representation was deficient in this regard.

Judgment of sentence affirmed.