606 A.2d 477

**COMMONWEALTH of Pennsylvania**

v.

**Edward NOVASAK, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 13, 1992.

Filed April 2, 1992.

---

22

24

Mark S. Greenberg, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com.

Before MONTEMURO, HUDOCK and CERCONE, JJ.

CERCONE, Judge:

This is a direct appeal from the judgment of sentence entered after a jury convicted appellant, Edward Novasak, of two counts of robbery,[1] one count of impersonating a public servant,[2] and one count of possessing an instrument

1. 18 Pa.C.S.A. § 3701(a).
2. *Id.* § 4912.

of crime.[3] For the reasons appearing below, we affirm.

The events underlying the instant appeal occurred on February 21, 1989 at approximately 2:00 p.m. when appellant entered the Philadelphia residence of Mr. and Mrs. James Aukett. The Auketts were both at home, as was their six year-old daughter and their infant granddaughter. Mrs. Aukett's seventy-six year old mother was also present at the time appellant invaded the Aukett home. Pretending to be a police officer, appellant was accompanied by a confederate who pretended to be his "snitch," or informant. Appellant pointed a handgun at the Aukett family, flashed a purported police badge at them, announced that he was from "five squad," and demanded "cocaine and drugs."

To keep his victims at a psychological disadvantage, appellant menaced them with his gun, demanded identification, and stated that he would arrest everyone present. He also threatened to tear the house apart if the Auketts did not produce contraband substances. When they explained that they had no drugs, appellant forced Mrs. Aukett to accompany him to her bedroom, and then to the kitchen, where he searched for items of value. Finally, appellant pretended to telephone police headquarters to report that his supposed investigation of the Aukett residence was a "bad call." Appellant took some of Mrs. Aukett's jewelry from her bedroom as well as cash in the amount of nine hundred seventy-one dollars ($971) which had been on top of the victims' microwave oven. After appellant departed, Mrs. Aukett pushed the redial button on the telephone and determined that he had called a recorded message number and not police headquarters. She then summoned the real police. *See* N.T. 12/20/89 at 18–37, 55–56.

After the jury found appellant guilty of the above delineated charges, appellant filed post verdict motions which were denied. He was sentenced to serve an aggregate term of incarceration of between twelve and one-half (12–1/2) and twenty-five (25) years. Appellant's motion to modify

3. *Id.* § 907(a) (criminal instruments generally) and (b) (possession of weapon).

sentence was denied by the lower court without the benefit of a hearing. The instant timely appeal followed, raising five issues for our consideration: (1) whether the Commonwealth engaged in prosecutorial misconduct during closing; (2) whether the lower court erred in denying appellant's request for police investigation reports of crimes in the South Philadelphia area similar to those with which appellant was charged; (3) whether the Commonwealth committed discovery violations regarding a rebuttal witness to appellant's alibi defense; (4) whether the trial court erred in failing to instruct the jury regarding the limited purpose for which appellant's prior conviction for theft could be considered; and (5) whether the court erred in denying appellant's motion for reconsideration of sentence without conducting a hearing. We shall address these contentions *seriatim*.

The first claim advanced is that the prosecutor engaged in misconduct during closing by repeatedly "raining invective" upon the appellant and by appealing to the passions of the jury. The Pennsylvania Supreme Court has consistently held that "not every intemperate or uncalled for remark by the prosecutor requires a new trial." *Commonwealth v. Green*, 525 Pa. 424, 460, 581 A.2d 544, 561 (1990). A new trial is required only in those instances where the language of the prosecutor is such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict." *Commonwealth v. Johnson*, 516 Pa. 527, 533, 533 A.2d 994, 997 (1987). The prejudicial effect of the prosecutor's remarks must be evaluated in the context in which they occurred. *Commonwealth v. Green, supra.*

[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statement or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.

*Id.* 525 Pa. at 460, 581 A.2d at 561–62 (quoting *United States v. Young,* 470 U.S. 1, 105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)). The initial determination of whether the prosecutor has exceeded the bounds of "oratorical flair" is for the trial judge. *Commonwealth v. D'Amato,* 514 Pa. 471, 491, 526 A.2d 300, 309–10 (1987). In its review, the appellate court is limited to determining whether the trial court abused its discretion. *Id.*

Appellant contends that the prosecutor stigmatized him as a "liar," a "thief," a "manipulator," a "phony," and an "actor." That the assistant district attorney used these terms is borne out by the record. However, appellant has failed to place the contested remarks in their proper context. The prosecutor stated the following when he began his closing:

> I told you in my opening statement that the evidence would show that this man is a liar, is a thief, and you should find him guilty. I add one more thing for you to think about. He is an actor and he is a manipulator. I recognize that I have the burden of proof in this case, that I must prove the defendant guilty beyond a reasonable doubt. But keeping that in mind, I submit to you that I have proven that man to be all of those things; a phoney [sic], a liar and a thief. And that what his defense is, that is, that he was somewhere else, is all a smoke screen.

N.T. 12/21/89 at 76.

It is well settled that a prosecutor is not permitted to express a personal belief regarding the defendant's guilt or innocence or the veracity of the defendant or the credibility of his witnesses. *Commonwealth v. Johnson,* 527 Pa. 118, 122–23, 588 A.2d 1303, 1305 (1991). However, such comments do not constitute reversible error where the prosecutor's statements are elicited by the nature of the defense mounted and where the evidence supports the inference that the defendant and/or a defense witness has lied. *Id.,* 527 Pa. at 123, 588 A.2d at 1305. Further, when assessing a claim of error of this type, the appellate court

must consider whether the prosecutor made a deliberate attempt to destroy the objectivity of the factfinder or merely summarized the evidence presented at trial with the oratorical flair permitted during argument. *Commonwealth v. Chester,* 526 Pa. 578, 600, 587 A.2d 1367, 1377–78 (1991), *cert. denied sub nom. Laird v. Pennsylvania,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

We have closely scrutinized the entire closing argument made by the prosecutor. N.T. 12/21/89 at 76–87. We see no indication that the assistant district attorney deliberately attempted to destroy the objectivity of the jury. The terms employed, although they may be deemed strong words, directly relate to facts placed into evidence in the case. It is not reversible error for the prosecutor to comment that the defendant lied in cases where the comment "was a fair inference from irrefutable evidence, rather than a broad characterization of the whole of the testimony as a 'big lie.'" *Commonwealth v. Graham,* 522 Pa. 115, 119, 560 A.2d 129, 130 (1989) (quoting *Commonwealth v. Floyd,* 506 Pa. 85, 93, 484 A.2d 365, 369 (1984)).

At trial, Mrs. Aukett testified that appellant pretended to be a police officer. Operating under this guise, appellant both confused and terrorized his victims, distracting them while he appropriated Mrs. Aukett's money and jewelry. N.T. 12/20/89 at 18–37. This evidence supports an inference that appellant was an "actor" who passed himself off as a police officer. It also supports the inference that he was a "phony," a "thief," and a "manipulator" of his victims' emotions and reactions. The record further discloses that appellant attempted to bolster his alibi defense by stating that during the time the Aukett family was being robbed, he was in the company of Deputy Sheriff Sam Maturo who was on duty with his K–9 unit and accompanied by his dog Max. N.T. 12/21/89 at 37. However, this evidence was directly contradicted by Sheriff's Department records which showed that Deputy Sheriff Maturo was out sick on the date and time appellant supposedly spoke with him. *Id.* at 60–64. This evidence supports the inference

that appellant provided false testimony and is a "liar" in this regard.

We have carefully reviewed the entirety of the prosecutor's closing remarks. Viewed in this full context, the comments do not support a finding of reversible error because they are a fair inference from evidence to which the assistant district attorney makes reference. We see no indication that the prosecutor engaged in a deliberate attempt to destroy the objectivity of the factfinder. Nor can we find abuse of discretion in the trial judge's determination that the questioned remarks created no avoidable prejudice or hostility in the jury. We note additionally that the trial court instructed the jury that the arguments of counsel are not evidence and that the inferences drawn by counsel are not binding. N.T. 12/21/90 at 101. The trial court explicitly explained that each member of the jury is charged with the duty to consider the evidence as he or she remembers it, and to draw his or her own inferences therefrom. *Id.* In light of the circumstances presented by this case, we conclude that appellant is not entitled to relief on this claim.

■ Appellant next argues that it was error for the lower court to deny his request for discovery information concerning police investigations of other South Philadelphia robberies allegedly perpetrated by an actor impersonating a police officer. This request was denied on November 16, 1989 by the Honorable Joseph O'Keefe sitting as Motions Judge. The same discovery motion was subsequently presented on November 27, 1989 to the Honorable Marvin R. Halbert, the trial judge in this case. Judge Halbert gave a "non-final" ruling that the discovery request was denied. Appellant now contends that both common pleas court judges erred in denying the motion, and that trial counsel was ineffective for failing to present it to Judge Halbert a second time, either immediately before or during trial.[4]

4. Trial counsel was permitted to withdraw after the jury found appellant guilty. Present counsel was appointed to represent appellant for the purposes of filing an appeal. Trial counsel's alleged ineffectiveness was correctly raised before the trial court via supplemental post-

As appellant correctly argues, this question is governed by Rule of Criminal Procedure 305 B(2)(d).

### Rule 305. Pretrial Discovery and Inspection

. . . .

(2) *Discretionary with the Court:* In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

. . . .

(d) any other evidence specifically identified by the defendant, provided the *defendant can* additionally *establish* that its disclosure would be in the interests of justice.

Pa.R.Crim.P., Rule 305 B(2)(d) (emphasis added). The following pronouncement by the Pennsylvania Supreme Court governs our analysis when reviewing the exercise of discretion by a court of common pleas:

[a]n abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence or the record, discretion is abused. *Commonwealth v. Moyer,* 497 Pa. 643, 647, 444 A.2d 101, 103 (1982).

*Commonwealth v. Kocher,* 529 Pa. 303, ——, 602 A.2d 1308, 1310 (1992).

verdict motions filed August 7, 1990. The question of prior counsel's ineffectiveness is therefore properly before us because it was raised "at the earliest stage in the proceedings at which the counsel whose effectiveness is being challenged no longer represents the defendant." *Commonwealth v. Hubbard,* 472 Pa. 259, 276–77 n. 6, 372 A.2d 687, 695 n. 6 (1977). *See also Commonwealth v. Pizzo,* 529 Pa. 155, 602 A.2d 823 (1992) (clarifying the procedural posture under which allegations of trial counsel's ineffectiveness may be raised by new counsel on direct appeal).

It is true, as this court has previously explained, that in exercising its power to grant or deny a request for discretionary discovery under Rule 305 B(2), the trial court is to be guided by the following principle:

In order to provide adequate information for informed pleas, expedite trials, minimize surprise, afford opportunity for effective cross-examination, and meet the requirements of due process, discovery prior to trial should be as full and free as possible consistent with the protection of persons, effective law enforcement, the adversary system, and national security.

*Commonwealth v. Thiel,* 323 Pa.Super. 92, 97, 470 A.2d 145, 148 (1983). Speaking for an equally divided court, Justice Zappala has further clarified Rule 305 B(2)(d) in the following manner:

[Subsection (d)] requires a showing that in addition to being material to the preparation of the defense and reasonable, the request be in the interests of justice. It is important to note that the Rule speaks in terms of a showing by the *defendant.* These conditions cannot be assumed, and they must be supported by evidence on the record. It is in this context that the evidence presented at the hearing must be examined to determine whether the defendant met his burden (or more precisely whether the court abused its discretion in determining that he had).

*Commonwealth v. Iannaccio,* 505 Pa. 414, 424, 480 A.2d 966, 971 (1984), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985) (Zappala, J., opinion in support of affirmance, emphasis in original).[5]

In the instant case, appellant sought files in the possession of the Commonwealth regarding other cases involving South Philadelphia robberies allegedly perpetrated by an actor or actors impersonating a police officer. Appellant's

5. We note that nothing in the opinions supporting reversal which were penned in *Iannaccio* by Chief Justice Nix or Justice Larsen directly contradicts Justice Zappala's above quoted statement. *Id.,* 505 Pa. at 427–441, 480 A.2d at 972–80 (Opinion in support of reversal by Nix, C.J. and Opinion in support of reversal by Larsen, J.).

theory is that any and all evidence derived from these files was relevant and material to the case *sub judice* because it would have been admissible at trial to show that the additional robberies (with which appellant had not been charged) were committed by a person other than appellant. Appellant cites *Commonwealth v. Rini*, 285 Pa.Super. 475, 427 A.2d 1385 (1981) for the proposition that *modus operandi* evidence is admissible at trial. *Rini* holds that "the defense may introduce evidence that someone else committed a crime which bears a *highly detailed similarity* to the crime with which the defendant is charged...." *Id.*, 285 Pa.Superior Ct. at 480, 427 A.2d at 1388 (emphasis added). While this statement is unquestionably the law of Pennsylvania, the ruling in *Commonwealth v. Rini* is inapposite to the instant case. Appellant's allegation of trial court error concerns the discoverability of certain information, not whether that information would ultimately constitute admissible evidence at trial. Thus, the proper focus of our analysis must concern whether appellant provided the court of common pleas with enough factual data to justify granting the discovery request. At this point, it is irrelevant whether the motion, if granted, would have yielded admissible evidence.

 We agree with appellant that evidence is always relevant and material to the defense if it tends to show that a specific crime of which a defendant stands accused was committed by someone else. *See, e.g., Commonwealth v. Boyle*, 470 Pa. 343, 359, 368 A.2d 661, 669 (1977). However, we cannot agree with appellant's conclusion that he was automatically entitled to receive copies of all police reports relating to every other South Philadelphia robbery allegedly perpetrated by an actor or actors impersonating a police officer. The simple fact is that the language of Rule 305 B(2)(d) requires a defendant to shoulder the burden of demonstrating to the trial court that the discovery information sought is material, that the request is reasonable, and that disclosure is in the interests of justice. In the instant case, appellant failed to meet this burden.

The certified record contains a copy of the written discovery motion presented to Judge O'Keefe. It states in pertinent part:

G. Upon information and belief it is the understanding of counsel that the Philadelphia Police, in particular Det. Joseph Hasara, investigated a series of robberies where the perpetrator identified himself as a police officer as the defendant was alleged to have done in this case. This evidence would be admissible at trial under the theory of common plan, scheme and design.

Discovery Motion filed 10/30/89 (citations omitted).[6] At the hearing before Judge Halbert, trial counsel explained that in Philadelphia there were "other similar robberies where a person posed as a police officer" and that Police Detectives Kuhlmeier and Hassara possessed police reports concerning the additional robberies. N.T. 11/27/89 at 3–4. Trial counsel then requested the court to order the police reports to be turned over to the defense. *Id.* at 4.

At the November 27th hearing, trial counsel plainly argued that the crime with which appellant was charged was a "signature crime." It is probable, although not patent on the face of the record, that trial counsel hoped to show that appellant was the victim of a mistaken identification and that the charged robbery was committed by some other person. However, such a theory was never actually proffered to the court of common pleas. Instead, appellant presented a lengthy legal argument regarding the admissibility of *modus operandi* evidence.[7] After carefully consid-

6. Although the docket from the lower court indicates that Judge O'Keefe conducted a hearing regarding the discovery motion on November 16, 1989, the certified record does not contain a transcript of that hearing.

7. Even in this context, it is noteworthy that appellant did not advance sufficient facts to show that the offense charged constituted a "signature crime." While identity may be proven or disputed by *modus operandi* evidence of other crimes, our law uniformly holds that proof of *modus operandi* requires more than a mere similarity between the crimes. Rather, there must be such a high correlation in the details of the crimes that proof a person committed one of them makes it very unlikely that anyone else committed the others. *See Commonwealth v. Morris,* 493 Pa. 164, 176, 425 A.2d 715, 720 (1981). *See also*

ering the briefs and the record certified on appeal, we find no indication that appellant ever alleged any reasonable quantum of facts to the lower court which would support the conclusion that the discovery information he sought was relevant and material to the preparation of a defense in the instant case. Appellant merely requested police reports concerning all other South Philadelphia robberies perpetrated by police impersonators.

Under the circumstances presented here, we cannot conclude that the court of common pleas "overrode" or misapplied the law of the Commonwealth by denying appellant's discovery requests. Nor have we discerned any indication of partiality, prejudice, bias, or ill-will toward appellant on the part of either Judge O'Keefe or Judge Halbert. We therefore decline to hold that the court of common pleas committed abuse of discretion in this matter.

Appellant also complains that former counsel was ineffective for failing to renew his discovery request with Judge Halbert immediately after the trial court's initial "non-final" ruling. We review a claim of ineffective assistance of counsel under the following standard:

First we must determine whether the issue underlying the claim is of arguable merit. *Commonwealth v. Evans*, 489 Pa. 85, 413 A.2d 1025 (1980). If the claim lacks merit, our inquiry ceases, as counsel will not be deemed ineffective for failing to pursue a baseless or meritless issue. *Commonwealth v. Nelson*, 514 Pa. 262, 523 A.2d 728 (1987). If, however, the claim has merit, we must then determine whether the course of action chosen by counsel had some reasonable basis designed to effectuate his client's interests. *Commonwealth v. Hentosh*, 520 Pa. 325, 554 A.2d 20 (1989). Finally, appellant must show

*Commonwealth v. Bryant*, 515 Pa. 473, 478, 530 A.2d 83, 86 (1987) (the fact that crimes are of the same general class or that the methods employed were similar is not enough to classify them as so "unusual and distinctive as to be like a signature"). We note that in the specific context of this claim, appellant's appeal brief alleges no special factual basis in addition to that advanced by trial counsel which would place the information sought in the category of a "signature crime."

that counsel's ineffectiveness so prejudiced his case that he was denied a fair trial. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

*Commonwealth v. March*, 528 Pa. 412, 414, 598 A.2d 961, 962 (1991). An allegation of ineffectiveness of counsel cannot be established without a finding of prejudice. *Id.,* 528 Pa. at 416, 598 A.2d at 963. *Accord Commonwealth v. Durst*, 522 Pa. 2, 559 A.2d 504 (1989); *Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988).

Even assuming, *arguendo*, that appellant had established the merit of the underlying claim, in order to show ineffectiveness he is still required to demonstrate that prior counsel's alleged ineffectiveness so prejudiced his case that he was denied a fair trial as a result of counsel's action or inaction. *Commonwealth v. March*, 528 Pa. at 414, 598 A.2d at 962. In light of the extensive identification testimony provided by both Mr. and Mrs. Aukett, we see no indication that appellant was denied a fair trial because his discovery request was denied. *See* N.T. 12/20/89 at 21–24, 31, 34 (testimony of Eleanor Aukett).

Mrs. Aukett gave a detailed description of the perpetrator and unhesitatingly identified appellant as the man who victimized her family. *Id.* She also testified that appellant remained in the Aukett home for about twenty minutes and that she spent more than five minutes in very close proximity to him in her kitchen. *Id.* Despite a thorough cross-examination during which trial counsel made every effort to shake Mrs. Aukett's testimony, she continued unflinchingly to identify appellant as the perpetrator. *See, e.g., id.* at 65. Mr. Aukett's testimony corroborates that given by his wife. *Id.* at 74–76, 77, 80, 82, 102. In consideration of the strong identification testimony provided by the Auketts regarding this specific robbery, we cannot conclude that appellant received an unfair trial because prior counsel failed to obtain discovery material pertaining to other robberies which were not charged against appellant but which allegedly followed a similar *modus operandi*.

■ The next contention before us is whether the Commonwealth committed discovery violations regarding the testimony of Deputy Sheriff Virgil Robinson who was called to rebut appellant's alibi testimony. The crux of this complaint is that appellant believes that the prosecutor, without having been directly informed of the fact, nevertheless knew that appellant's alibi defense would hinge on evidence that Deputy Sheriff Sam Maturo and his dog were on duty near City Hall at the time the Auketts were being robbed. Appellant contends that the Commonwealth was derelict in its duty under Pa.R.Crim.P., Rule 305, 42 Pa.C.S.A. for failing to notify the defense that Deputy Sheriff Robinson, the Sheriff's Department time keeper, would testify as to the contents of Sheriff's Department business records indicating that Deputy Sheriff Maturo was ill and had not reported for duty on the relevant date. The Commonwealth counters this argument by contending that because appellant himself committed a discovery violation in failing to include Deputy Sheriff Maturo's name on his Notice of Alibi Defense, the prosecution was not placed on notice that appellant intended to base his defense on the duty status of Deputy Sheriff Maturo.

Rule of Criminal Procedure 305 C, which governs disclosure of material evidence relevant to an alibi defense contains the following pertinent provisions:

## C. Disclosure by the Defendant

### (1) *Mandatory:*

(a) Notice of Alibi Defense: A defendant who intends to offer the defense of alibi at trial shall, at the time required for filing the omnibus pretrial motion under Rule 306, file of record notice signed by the defendant or the attorney for the defendant, with proof of service upon the attorney for the Commonwealth, specifying intention to claim such defense. Such notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of

witnesses whom the defendant intends to call in support of such claim.

. . . .

(c) Disclosure of Reciprocal Witnesses: Within seven (7) days after service of such notice of alibi defense . . ., or within such other time as allowed by the court upon cause shown, the attorney for the Commonwealth shall disclose to the defendant the names and addresses of all persons the Commonwealth intends to call as witnesses to disprove or discredit the defendant's claim of alibi. . . .

(d) Failure to File Notice: If the defendant fails to file and serve notice of alibi defense . . . as required by this rule, or omits any witness from such notice, the court at trial may exclude the testimony of any omitted witness, or may exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, or may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

(e) Failure to Supply Reciprocal Notice: If the attorney for the Commonwealth fails to file and serve a list of its witnesses as required by this rule, or omits any witness therefrom, the court at trial may exclude the testimony of any omitted witness, or may exclude any evidence offered by the Commonwealth for the purpose of disproving the alibi, insanity or mental infirmity defense, or may grant a continuance to enable the defense to investigate such evidence, or may make such other order as the interests of justice require.

. . . .

(g) Impeachment: A defendant may testify concerning an alibi notwithstanding that the defendant has not filed notice, but if the defendant has filed notice and testifies concerning his presence at the time of the offense at a place or time different from that specified

in the notice, the defendant may be cross-examined concerning such notice.

Pa.R.Crim.P., Rule 305 C(1)(a), (c-e), and (g). The certified record discloses that appellant filed a Notice of Alibi Defense on July 31, 1989 prior to his first trial.[8] This notice states that on the day of the alleged offense, appellant was en route from 219 N. Broad Street to his home at 1222 Morris Street in the City of Philadelphia. The July 31st filing additionally identified Joyce and Michelle Shaner, also of 1222 Morris Street, as witnesses on appellant's behalf. Although appellant re-filed his discovery requests in conjunction with his second trial, he did not file another Notice of Alibi Defense.

Appellant cites *Commonwealth v. Thiel, supra,* for the proposition that the Commonwealth's failure to disclose possible impeachment or rebuttal evidence may lead to reversible error when such evidence is sprung upon the defendant unawares. *Thiel* holds that Rule 305 B(1), pertaining to mandatory disclosure by the Commonwealth, makes no distinction between rebuttal evidence and evidence the Commonwealth expects to use in its case-in-chief. *Id.,* 323 Pa.Super. at 98, 470 A.2d at 148. We agree with appellant that, placed in its proper context, the ruling in *Thiel* disapproves of "gamesmanship" which would result in a "trial ambush" for a defendant. However, we do not agree that the events which occurred in the instant case warrant such an interpretation.

As the Commonwealth has correctly averred, appellant omitted all mention of Deputy Sheriff Maturo in his Notice of Alibi Defense. Arguably, such mention is not required under Rule 305 C because appellant did not call Deputy Sheriff Maturo as a witness. Nevertheless, since appellant did not file a second Notice of Alibi Defense, we cannot fault the prosecutor for failing to predict that appellant would pursue an identical alibi strategy at the second trial.

8. Appellant was granted a second trial resulting in the verdict which is the subject of the instant appeal. The first trial ended on August 23, 1989 because the jury was judged to be hopelessly deadlocked.

This is especially true as the new trial was granted because of a hung jury rather than from some other cause. The simple fact is that appellant never placed the Commonwealth on notice that the question of Deputy Sheriff Maturo's duty status on the date in question would be an issue at the second trial. As we explained in *Commonwealth v. Thiel,* "we cannot expect the Commonwealth to anticipate the materiality of all possible rebuttal evidence, ... and we can imagine cases in which the materiality of certain evidence in the Commonwealth's possession might not become apparent until after trial has begun." *Id.,* at 97–98, 470 A.2d at 148.

In the instant case, the trial court permitted appellant to give his alibi testimony and to call corroborating witnesses even though one of the witnesses, Allison Bell, was not listed on the Notice of Alibi Defense filed before the first trial. Appellant stated that he could not have perpetrated the offenses with which he was charged because at the relevant time he was in a different location. Specifically, appellant testified that he had kept an appointment with Ms. Allison Bell, an employee of the City of Philadelphia, at 121 North Broad Street and that he had been accompanied on this expedition by Michele Shaner. N.T. 12/21/89 at 35–36. As a corroborative detail for his story, appellant explained that he and Michele stopped to talk with Deputy Sheriff Maturo who was on duty with the K–9 unit at City Hall. *Id.* at 37. Michele Shaner, a seven year old girl, corroborated appellant's testimony regarding the trip to Ms. Bell's office and the fact that she saw a "cop" on duty with his dog. *Id.* at 24–26. Despite the fact that the Commonwealth had never been notified that she would appear as a witness for appellant, Ms. Bell was permitted to testify that appellant, accompanied by young Michele Shaner, kept an appointment at her office at the relevant time and date. *Id.* at 16–18.[9] *See also Commonwealth v. Anthony,* 376

9. We note that the index of the trial transcript incorrectly identifies this testimony as having been provided by Joyce Shaner, a witness listed on appellant's Notice of Alibi Defense. The testimony was

Pa.Super. 623, 546 A.2d 1122 (1988) (alibi witnesses not disclosed before the morning of trial were properly barred from testifying).

After the evidence concerning appellant's alibi defense was concluded, including the testimony by surprise witness Allison Bell, the prosecutor called Deputy Sheriff Virgil Robinson to provide rebuttal testimony. *Id.* at 54. When appellant objected, the trial court conducted a sidebar conference on the admissibility of the proffered evidence. N.T. 12/21/89 at 54–60. After the trial court was satisfied that the prosecutor had not been placed on notice regarding the precise nature of appellant's alibi testimony, he ruled the rebuttal evidence admissible and offered defense counsel time in which to conduct an investigation. N.T. 12/21/89 at 59–60. This was a proper remedy under Rule 305 C(1)(e), *supra.* We find no indication that the Commonwealth deliberately concealed material discovery information from appellant or that the trial court committed an abuse of discretion in fashioning a remedy for appellant's allegation that a discovery violation had occurred.

 Appellant's penultimate claim is that the trial court erred in failing to *sua sponte* give an instruction limiting the purpose for which appellant's prior conviction on theft charges could be considered by the jury. Appellant also levels a charge of ineffectiveness against trial counsel for failing to request such an instruction. The record shows that, in an apparent attempt to convince the jury he was a reformed thief now incapable of armed robbery, appellant testified on direct examination that he had two prior auto theft convictions. N.T. 12/21/89 at 41–42. As the Commonwealth correctly argues, once appellant placed his character in issue via his own direct testimony, the prosecution was entitled to exploit the opening on cross-examination and in closing. *See* 42 Pa.C.S.A. § 5918(1) (Examination of defendant as to other offenses) and cases collected thereunder. *See also Commonwealth v. Martin,*

indisputably provided by Ms. Allison Bell, who identified herself before testimony began. *Id.* at 15.

465 Pa. 134, 171–73, 348 A.2d 391, 410–11 (1975), *cert. denied,* 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976) (Commonwealth was entitled to counter character evidence adduced by defendant).

Appellant's contention that he was deprived of a limiting instruction is belied by the record which shows that the trial court actually interrupted appellant's character testimony to caution the jury regarding the purpose for which they could consider this evidence.

> Q. (by defense counsel): Sir, back in 1979 and 1980 you were convicted, were you not, of two counts of auto theft?
>
> A. (by appellant): Yes, I was.
>
> Q. You served time for these crimes?
>
> A. I served two to five years running concurrently for each charge and did my time.
>
> Q. You served time in prison?
>
> A. Yes, and I served all my parole properly without—
>
> Q. (Interposing) that was in 1979 and 1980, about ten years ago?
>
> A. Yes.
>
> Q. Okay. Sir—
>
> THE COURT: (Interposing) Members of the jury, once again let me advise you this testimony concerning the prior convictions for the defendant and the charges that he just recited are not to be received by you as evidence that he may be a bad guy or indeed that he committed this offense. But it is evidence for you to consider as to whether that conviction of that offense in any way affects his credibility or believability in this case.

N.T. 12/21/89 at 41–42. The above transcript extract plainly demonstrates that the trial judge *sua sponte* provided an appropriate jury instruction. We will not find reversible error on this basis. Neither can the Assistant District Attorney be faulted for cross-examining appellant regarding the character evidence or for referring to this testimony during summation. *See, e.g., Commonwealth v. Martin,*

*supra* (prosecution was entitled to challenge defendant's character testimony where the trial court instructed the jury on the limited purposes for which the evidence was offered).

Appellant has also alleged that prior counsel was ineffective for failing to request an additional instruction during the jury charge. Even assuming, solely for the sake of argument, that the issue underlying this claim is of arguable merit, appellant has failed to meet his burden of showing that trial counsel's inaction resulted in an unfair trial. This court will not find ineffectiveness unless an appellant demonstrates that the challenged action or inaction of counsel so prejudiced his case as to result in an unfair trial. *Commonwealth v. March, supra.* A claim of ineffectiveness of counsel cannot be established without such a finding of prejudice. *Id.,* 528 Pa. at 416, 598 A.2d at 963. In light of the fact that the jury actually received the benefit of a correct and timely curative instruction, we are unable to conclude that appellant was so prejudiced by the lack of a second instruction that he received an unfair trial as a result. We therefore decline to deem prior counsel ineffective on this basis.

The final issue presented is that the trial court erred in denying appellant's motion for reconsideration of sentence without holding a hearing. The essence of appellant's claim does not concern the absence of a hearing, but rather focuses on the nature of the sentence imposed. It is appellant's contention that the trial court erred in sentencing outside the Sentencing Guidelines.[10] This is a challenge to the discretionary aspects of the sentence. Appellant's brief includes a separate statement contending that a substantial question exists regarding the appropriateness of the sentence imposed under the Sentencing Code as required by the Pennsylvania Rules of Appellate Procedure. *See* 42 Pa.C.S.A. § 9781(b); Pa.R.A.P., Rule 2119(f), 42 Pa.C.S.A.; *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522

---

**10.** 204 Pa.Code § 303.1 *et seq.* The Sentencing Guidelines have been reproduced for convenience at 42 Pa.C.S.A. § 9721 *et seq.*

A.2d 17 (1987). This claim has therefore been properly preserved.

However, the sole basis advanced here for overturning the order of sentence is that the term of imprisonment imposed exceeds that recommended by the Sentencing Guidelines. This allegation is not enough, standing alone, to justify vacating an order of sentence. The trial court is free to sentence a defendant outside the Guidelines. *Commonwealth v. Ousley*, 392 Pa.Super. 549, 553, 573 A.2d 599, 601–02 (1990). The only limitation on such an exercise of the sentencing court's discretion is that the lower court must provide a statement of reasons explaining the deviation from the guidelines. *Id.* In the instant case, the sentencing judge conducted a thorough hearing in which he discussed the sentencing rationale in great detail. N.T. 10/31/90 at 27–35 (discussion of the presentence and psychiatric report with counsel), 39 (concise statement of reasons for sentencing outside the Guideline range).

We note moreover, that this court will not find a substantial issue regarding the appropriateness of sentence where the sentencing court had the benefit of a pre-sentence investigation which it considered carefully. *Commonwealth v. Sauter*, 389 Pa.Super. 484, 488, 567 A.2d 707, 709 (1989), *allocatur denied*, 525 Pa. 598, 575 A.2d 564 (1990). The record in the instant case plainly indicates that presentence reports were meticulously considered by the sentencing judge both prior to the sentencing hearing and during the hearing. N.T. 10/31/90 at 27–39. We therefore conclude that appellant has failed to present us with a substantial question which will allow us to review the discretionary aspects of his sentence. As such, we must disallow the appeal.

Judgment of sentence affirmed.