**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMIN ACKRIDGE | : | |
| | : | |
| Appellant | : | No. 2868 EDA 2017 |

Appeal from the Judgment of Sentence July 17, 2017
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s):  CP-51-CR-0007098-2016, CP-51-CR-0007099-2016,
CP-51-CR-0007100-2016, CP-51-CR-0007101-2016

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED MAY 24, 2019**

Amin Ackridge appeals from the judgments of sentence imposed at the four above docket numbers after a jury convicted him of twenty-eight offenses, including multiple counts each of attempted murder, robbery, conspiracy, and possession of a firearm prohibited.  We affirm.

Appellant and a co-conspirator engaged in a string of robberies over a period of six weeks in the same geographical area of Philadelphia.  In each instance, Appellant approached his male victim from behind, took the victim's valuables at gunpoint, used the same gun to shoot the unarmed victim in a vital part of the body for no apparent reason after the robbery was completed,[1]

---

[1] Appellant's gunshot victims suffered injuries such as permanent paralysis from a severed spine, permanent bowel damage, shattered and broken hips, a collapsed lung, and esophageal and stomach reconstruction surgery.

then proceeded to his co-conspirator's getaway vehicle. Appellant was ultimately arrested in Delaware after a police officer caught him in the act of attempting another robbery with the same *modus operandi* (albeit with a different accomplice).

After a week-long jury trial, at which Appellant challenged the identification of him as the perpetrator while his co-conspirator and the victims testified against him, the jury found Appellant guilty of all charges.[2] Following a presentence investigation and a sentencing hearing at which the trial court heard from the victims as well as from Appellant's siblings, the trial court imposed consecutive, guideline-range sentences for each conviction that did not merge, resulting in an aggregate sentence of 194 to 456 years of imprisonment.[3] Appellant filed timely post-sentence motions, which resulted in the imposition of a modified aggregate sentence of 178 to 416 years of imprisonment. Appellant thereafter filed timely notices of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents this Court with the following questions on appeal:

[1.]  Did the trial court err and/or abuse its discretion when it removed juror number 1 from the jury and replaced that juror with juror number 13 without conducting a colloquy of the removed juror where the removed juror appeared to be unreceptive towards the Commonwealth's case and the

---

[2] Prior to commencement of deliberations, the trial court dismissed a juror for failure to pay attention to the witnesses, and replaced him with an alternate.

[3] The Commonwealth had sought an aggregate term of 224 to 448 years of imprisonment. **See** N.T. Sentencing, 7/17/17, at 8.

prosecutor sought to remove that juror to [*sic*] as he seemed more favorable to the defense and there is no substantial evidence of record that the removed juror was failing to abide by the court's instructions or otherwise failing to perform his duties?

[2.] Did the trial court err and/or abuse its discretion when it granted the Commonwealth's request to consolidate four matters charging unrelated robberies for a single jury trial where the consolidation was unduly prejudicial to [Appellant] and this prejudice outweighed - substantially - any probative value of identification or common plan?

[3.] Did the trial court err and/or abuse its discretion when it granted the Commonwealth's request to present the details of [Appellant's] arrest in the State of Delaware where those details included brandishing of a firearm where that firearm was not related to the crimes for which [Appellant] was tried and the actions in Delaware were not relevant to [Appellant's] *modus operandi* as this evidence was unduly prejudicial to [Appellant] and this prejudice outweighed - substantially - any probative value of that evidence as it bore no relation to the crimes for which [Appellant] was being tried because it occurred in another state, under unknown circumstances, with unidentified accomplices and is undisputed that the weapon recovered during the Delaware arrest was in no way connected to any crime for which [Appellant] was tried in the matters *sub judice*?

[4.] Is the sentence imposed unduly harsh and excessive?

Appellant's brief at 6-7.[4]

---

[4] Appellant's brief included a statement pursuant to Pa.R.A.P. 2119(f) wherein he asserts that his claim, that the trial court failed to consider mitigating factors in imposing an excessive aggregate sentence, raises a substantial question that his sentence is inappropriate under the sentencing code. **See** Appellant's brief at 43-49. We agree. **See**, **e.g.**, **Commownealth v. Swope**, 123 A.3d 333, 339 (Pa.Super. 2015) (holding a substantial question was presented by claim that imposition of consecutive sentences was excessive in conjunction with assertion that the court failed to consider mitigating factors).

The following principles inform our consideration of Appellant's claims of error. The decision to discharge a juror is within the sound discretion of the trial court, even after the jury has been empaneled and sworn, and will not be disturbed in the absence of an abuse of that discretion. *See*, *e.g.*, *Commonwealth v. Smith*, ___ A.3d ___, 2019 WL 1272696 at *7 (Pa.Super. Mar. 20, 2019). "[W]hen there is no evidence to support the trial court's decision to remove a juror, the court has abused its discretion." *Bruckshaw v. Frankford Hosp. of City of Philadelphia*, 58 A.3d 102, 111 (Pa. 2012).

With regard to both the consolidation of the four cases and the admission of evidence of the Delaware incident, we review the trial court's rulings for an abuse of discretion. *See*, *e.g.*, *Commonwealth v. Nevels*, 203 A.3d 229, 236 (Pa.Super. 2019) (admission of evidence); *Commonwealth v. Janda*, 14 A.3d 147, 155 (Pa.Super. 2011) (consolidation). Offenses charged in separate criminal informations may be joined for trial if the evidence of each would be admissible in a separate trial and there is no danger of confusing the jury. Pa.R.Crim.P. 582(A)(1)(a). "[E]vidence of other crimes is admissible when it tends to prove a common plan, scheme or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others" or the identity of the perpetrator. *Commonwealth v. Judd*, 897 A.2d 1224, 1231-32 (Pa.Super. 2006).

As to Appellant's sentencing challenge,

- 4 -

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> When imposing sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Kitchen*, 162 A.3d 1140, 1146 (Pa.Super. 2017) (cleaned up).

After a thorough review of the certified record, the parties' briefs and the pertinent law, we discern no abuse of discretion on the part of the trial court as to the issues raised by Appellant, and we affirm the judgment of sentence on the basis of the cogent and well-reasoned opinion that Honorable Charles A. Ehrlich entered on March 19, 2018.

Specifically, Judge Ehrlich observed that Juror No. 1 was properly excused because he refused to follow the court's instructions to pay attention to the witnesses while they were testifying to assess their credibility.[5] *See* Trial Court Opinion, 3/19/18, at 3-6. Judge Ehrlich also explained that the

---

[5] Contrary to Appellant's contention, there was an extensive record made concerning the lack of attention paid by Juror No. 1. supporting the trial court's decision to remove him. *See* N.T. Trial, 4/21/17, at 94-95; N.T. Trial, 4/26/17, at 151-58, 161-70.

four cases were appropriate for consolidation because the details of the crimes were sufficiently distinct to establish identity of the assailant, and the court minimized any potential for prejudicial effect by instructing the jury as to the use of the evidence. *Id*. at 7-8.[6] The trial court likewise validated the admission of evidence of the subsequent attempted robbery in Delaware as probative of establishing Appellant's identity as the perpetrator of the Philadelphia robberies, and the potential for prejudice was alleviated by a limiting instruction. *Id*. at 9-10. Finally, Judge Ehrlich supported the propriety of Appellant's sentence by discussing how the "unnecessarily violent nature of these offenses and their impact on the victims and the public" warranted the lengthy term of imprisonment despite consideration of Appellant's mitigating evidence. *Id*. at 10-13.

As to all of the foregoing points, we adopt Judge Ehrlich's reasoning as our own.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/24/19

---

[6] *See also Commonwealth v. Janda*, 14 A.3d 147, 156 (Pa.Super. 2011) (affirming consolidation of nine similar burglaries for single trial).

**FILED**

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

2018 MAR 19 PH 3: 2

OFFICE OF JUDICIAL RECO
CRIMINAL DIVISION
FIRST JUDICIAL DISTRIC
OF PENNSYLVANIA

Commonwealth of Pennsylvania      :      CP-51-CR-0007098-2016
                                                CP-51-CR-0007099-2016
                                   :      CP-51-CR-0007100-2016
v.                                  CP-51-CR-0007101-2016

                                   :

                                   :      SUPERIOR COURT
Amin Ackridge                      :      NO. 2868 EDA 2017

## OPINION

Ehrlich, J.

Amin Ackridge, hereinafter referred to as Appellant, was found guilty of four (4) counts of criminal attempt-murder, four (4) counts of aggravated assault, six (6) counts of robbery, six (6) counts of complicacy to commit robbery, four (4) counts of possession of a firearm prohibited and four (4) counts of firearms not to be carried without a license.[1] The charges stem from a series of four gunpoint robberies during the months of June and July 2015. Jury selection occurred over a two day period with twelve jurors and three alternates selected and sworn in on April 19, 2017. Trial began on April 19, 2017 and continued for five (5) additional days with both the prosecution and defense resting on April 26, 2017. The jury reached its verdict on April 28, 2017 finding the appellant guilty of all charges. Appellant was sentenced on July 17, 2017, to an aggregate term of 192 to 456 years. A timely appeal followed.

CP-51-CR-0007098-2016 Comm. v. Ackridge, Amin
Opinion



8084062341

---

[1] 18 Pa.C.S.A. § 901§§A, § 2702§§A1, § 3701§§A11, § 903, § 6105§§A1 and § 6106§§A1, respectively.

On appeal, Appellant avers the following four points of error:

I.  The trial court erred and/or abused its discretion when it removed juror number 1 from the jury and replaced that juror with juror number 13. That juror seemed to be unreceptive towards the commonwealth's case and the prosecutor sought to remove that juror to [sic] as he seemed more favorable to the defense. There was no evidence submitted that juror number 1 was failing to abide by the court's instructions or otherwise failing to perform his duties. The facts alleged by the commonwealth in support of the juror's removal were wholly speculative. The juror at issue was not colloquied to determine whether or not he was, in fact, performing his duties and following the court's instructions. It was error and/or an abuse of discretion to remove this juror over the objection of the defense where the Commonwealth perceived that juror as unreceptive to its witnesses and evidence.

II.  The trial court erred and/or abused its discretion when it granted the Commonwealth's request to consolidate the four matters identified in the caption above for jury trial. The consolidation was unduly prejudicial to the defendant and this prejudice outweighed-substantially- [sic] any probative value of identification that the consolidation provided as multiple victims were able to independently identify defendant at trial without reference to defendant's other alleged crimes and where testifying co-defendant provided identification testimony of defendant with respect to every alleged incident independently of the other alleged crimes. Moreover, the identification of the defendant by the testifying co-defendant was supported by the evidence including, but not limited to cellular telephone records. Accordingly, consolidation of the matters for trial was unduly prejudicial, improper, and requires reversal and a new trial.

III.  The trial court erred and/or abused its discretion when it granted the Commonwealth's request to present the details of the defendant' arrest in the State of Delaware where those details included brandishing of a firearm where that firearm was not related to the crimes for which the defendant was tried. The court determined that the facts surrounding the defendant's arrest in Delaware were relevant to the defendant's *modus operandi*. This holding was unduly prejudicial to the defendant and this prejudice outweighed –

substantially- any probative value of that evidence as it bore no relation to the crimes for which the defendant was being tried. It occurred in another state, under unknown circumstances, with unidentified accomplices. It is undisputed that the weapon involved recovered during the defendant's arrest in Delaware was in no way connected to any crime for which he was being tried in the matters captioned above. In addition, defendant was not being sought by the Philadelphia Police for the crimes charged in the matters *sub judice* at the time of his arrest in Delaware, so any flight by defendant was not probative of his responsibility for the crimes charged in these matters.

IV. The sentence imposed, which is tantamount to a life sentence under the circumstances of this defendant, is unduly harsh and excessive as if fails to take into account all mitigating, relevant, and necessary factors to be considered by a sentencing court, as set forth in the argument at the sentencing hearing, (including the defendant's age, rehabilitative needs, the fact he was previously the victim of gun violence, became addicted to prescription medications as a result of his injuries, his mental ailments and medication for same and his positive actions in the community including coaching), [sic] and confinement in a state correctional facility for the term imposed is not the least restrictive sentence necessary to effectuate the aims of the Pennsylvania sentencing laws. The sentence imposed is greater than that which would be consistent with protection of the public, the gravity of the defendant's conduct as it relates to the impact on the life of others in the community, and the rehabilitative needs of defendant.

*Appellant's Pa.R.A.P. 1925(b) Statement.*

As will be discussed below, these claims are without merit. Accordingly, no relief is due.

## DISCUSSION

### I. Dismissal of Juror No.1

On April 26, 2017 immediately after both the commonwealth and defense rested, the commonwealth made an oral motion to the Court to dismiss Juror No. 1 due to a "lack of

attentiveness as to the observations he's making of the witnesses." N.T. 4-26-17, P. 151. More specifically, the commonwealth argued that during trial there were moments when identifying witnesses made identifications that included 'body language and movement" that are "essential to judging credibility and the viability of what they're saying as witnesses." The commonwealth argued that Juror No. 1 had his head down during significant portions of the examinations of two of the detectives and several complaining witnesses. The commonwealth further argued that during witness examinations, this particular juror's gaze was for long periods of time focused towards the back doors of the courtroom, in opposite of where the witnesses were seated on the witness stand.

The issue of this particular juror's inattentiveness had been initially raised with the court by counsel a few days earlier on April 21, 2017. This court, after considering the high importance of juror attentiveness, especially while note-taking, gave the jurors a subsequent instruction on Monday, April 24, 2017 about note-taking and the importance of making observations of the witnesses during their testimony in order to assess their credibility.[2] This follow-up instruction was given to the jury in addition to the standard preliminary instructions that were given by the Court to the jurors at the start of the trial regarding note-taking, which included the following language:

> "If you do take notes, remember that one of your responsibilities as a juror is to observe the demeanor of witnesses to help you assess their credibility. Do not become so involved with note taking that it interferes with your ability to observe a witness or distracts you from hearing the questions being asked of the witness and the answers being given by the witness."[3] N.T. 4-19-17, pp. 16.

---

[2] See Pa. R. Crim. P. 647(E): "The trial judge may give any other instructions to the jury...at any time during the trial as the judge deems necessary and appropriate for the jury's guidance in hearing the case."

[3] See Pa. R. Crim. P. 644

- 4 -

Prior to making is ruling on the dismissal of this juror, this Court made the following observations and assessment of Juror No.1:

"But I watched on the Monday the 24th, the 25th and today. And from what I observed repeatedly is that, for long periods of time, this juror looks down. He does not look at the witnesses. And when he doesn't look down, he stares straight ahead. He stares up briefly then goes back to making mark. He's moving his clipboard around in a way that indicates that he could be drawing. Or maybe that's how he writes to get everything on the page...I looked at the other jurors because I wanted to compare what was going on last week and this week. What I see with the other 14 jurors is that they are taking notes, but they're also looking at the witness, and they're looking at the attorneys. They are taking notes but they're observing the witnesses, which is what jurors need to do in order to make affair assessment of credibility.' Id @ pp. 163-64

"I am concerned, frankly, about the fairness for a defendant who is entitled to a fair trial and the commonwealth which is also entitled to a fair trial. And this case has been going on for about a week. It involves many witnesses, key civilian witnesses and police. It is a case where credibility determinations are going to have to be made, because my understanding of the defenses that Mr. Ackridge did not do any of these crimes. Misidentification, it was somebody else who did it. That Mr. Oliver is lying, who is the cooperating codefendant; and the civilian witnesses are mistaken, those who made identifications and those who provided information to the police.

I don't see how Juror No.1 can make credibility determinations necessary in a fair trial if he has not been looking at the witnesses and has been so engrossed in taking notes... But his conduct during trial, which is so different than the conduct of the other 14 jurors who are taking notes and watching the witnesses. It appeared that he was not writing. He was just staring straight ahead....And it didn't even make sense where he was staring because Mr. Page [defense counsel] was not even sitting at the table when this was going on." Id @ pp. 167-69

In light of the arguments of counsel and this court's own independent observations, this Court granted the Commonwealth's Motion to Dismiss Juror No. 1, replacing him with alternate Juror No.13, prior to closing arguments.

On appeal, appellant argues that this court should not have dismissed the juror, absent a showing that the juror was failing to abide by the court's instructions or otherwise failing to perform his duties. Appellant further argues that it was the commonwealth's perception that this

juror was unreceptive to their witnesses and evidence that led to his dismissal and that this court should have colloquied the juror to determine if he was in fact perfuming his duties.

The decision to discharge a juror is within the sound discretion of the trial court and will not be disturbed absent an abuse of the discretion. The discretion to dismiss a juror exists even after the jury has been empaneled and juror sworn. *Commonwealth v. Rush*, 162 A.3d 530 (Pa. Super. 2017). As this court stated on the record prior to making its ruling to dismiss and replace Juror No. 1, it was not a decision this court took lightly. Following this court's own observations of this Juror's inattentiveness, and at times, his refusal to observe the witnesses in order to assist with his own credibility and identification determinations, the court again formally re-instructed the jury panel on the need to observe the witnesses demeanor while testifying.

However, Juror No. 1 continued for the next several days to glance downward for long stretches of time and inexplicably look straight towards the back of the courtroom away from the witness stand for no apparent reason. It was the decision of this Court that Juror No. 1 was not following the Court's instructions and was refusing to perform one of his main functions, assessing witness demeanor while they were testifying in order to determine the witness's credibility. As Juror No. 1 was unwilling to perform this function, both the Commonwealth and the appellant were being deprived of a fair and impartial trial and this Court therefore dismissed Juror No. 1 and replaced him with an alternate prior to closing arguments. There was no information presented as to the juror's views on the case. Therefore this claim is without merit. Accordingly, this Court made no error in dismissing Juror No.1.

## II. Granting of Commonwealth's Motion to Consolidate Matters (PA. R.E. 404(b))

The Commonwealth filed a Motion to consolidate four (4) open matters regarding the defendant where he was charged in all four with gunpoint robberies / attempted murders where the victims in all four cases were shot. Identification of the defendant was a major contested issue despite the fact that the accomplice / getaway driver in all four robberies was testifying against the defendant. The appellant's contention both at the pre-trial stage and at trial was that the co-defendant was lying and that the victim identifications of him as the perpetrator were wrong. As such, the commonwealth was seeking to consolidate the matters not merely for the sake of judicial convenience but for probative evidence of the appellant's common plan or scheme and identity.

The Court heard arguments and was satisfied that the evidence that would be offered for all four cases was being offered for a legitimate purpose, that is, to show a common plan or scheme for the robberies and the identity of the perpetrator. Further, the court found that the probative value of this evidence outweighed its potential for unfair prejudice. *Commonwealth v. Hairston*, 624 Pa. 143, 84 A.3d 657, (2014) *cert denied*, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014).

Identity as to the charged crime may be proven with evidence of another crime where the separate crimes share a method so distinctive and circumstances so nearly identical as to constitute the virtual signature of the defendant. What is required therefore "is such a high correlation in the details of the crimes that proof that such a person committed one of them makes it very unlikely that anyone else committed the others." *Commonwealth v. Novasak*, 414 Pa.Super. 21, 606 A.2d 477 (1992). In the four cases sought to be consolidated, there with numerous similarities:

(1) All occurred in the late afternoon or evening
(2) All involved robberies of males who were strangers to their assailant
(3) All victims were approached from behind with a gun pointed at them and taken each time are small amounts of money and cell phones.
(4) All victims were shot after they were robbed for no apparent reason.

(5) All four times the assailant leaves on foot but then gets into a car to escape the scene.

(6) All four have the same type shell casings found at the scene and match the same gun that is recovered from the cooperating co-defendant.

(7) All four robberies occurred in close proximity to one another with three occurring within five blocks of each other and the fourth occurring further west, closer to the appellant's home.

(8) All four occurred within six weeks of one another.

As such, this court examined the details and surrounding circumstances of each criminal encounter to assure that the evidence revealed criminal conduct which was so distinct and so nearly identical as to become the signature of the same perpetrator. Further, this court sought to balance the potential prejudicial impact of the evidence with the commonwealth's need to present evidence under the common plan exception, as well as this court's ability to caution the jury concerning the proper use of such evidence by them in their deliberations. See *Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, (Pa.Super.2007). *appeal denied*, 596 Pa.715, 944 A.2d 756 (2008) (quoting *Commonwealth v. Smith* 432 Pa.Super. 91, 635 A.2d 1086 (1993)).

Given the nearly identical manner in which the four crimes were committed, this Court found that the commonwealth's need to prove a common plan and the identity of appellant increased its probative value and outweighed any prejudicial impact to the appellant. Moreover, this court, having ruled that the four (4) robberies could be consolidated for trial, gave the jury a limiting instruction before deliberations on their need to give separate consideration as to each of the four crimes charged. N.T. 4-27-17, pp.38-40. See *Id.* **G.D.M., Jr.** at p.987. Accordingly, this Court's granting of the Commonwealth's Motion to Consolidate was appropriate and not in error.

## III.  Granting of Commonwealth's Motion to Permit Evidence of a Subsequent Bad Act - Appellant's Arrest in the State of Delaware (Pa.R.E.404(b))

On August 12, 2015, approximately 3 weeks after appellant's latest of four (4) gun point robberies in Philadelphia, he was arrested in the State of Delaware when he was observed by a police officer exit the passenger side of a minivan while holding a gun and approach a male seated on a bicycle from behind with the firearm extended towards the male. The appellant was immediately apprehended and the minivan, which had been waiting for him, fled the scene.

For the reasons set forth above regarding the consolidation for trial purposes of appellant's four open robbery/attempted murder cases, this court granted the commonwealth's motion to permit this evidence of his Delaware arrest at trial in order to show a common plan and identity of the perpetrator. Appellant's arrest in the State of Delaware was almost identical to the four cases that were consolidated and about to be tried in Pennsylvania. In this subsequent arrest in Delaware, the appellant exited a vehicle, approached a male from behind, pointed the gun towards him and attempted to rob him. But for the officer making this observation, appellant would have continued his robbery and possible assault of this male.

Moreover, identical to his cases in Philadelphia, there was a vehicle which appellant exited and which remained on the scene for appellant to make his escape. Although the driver of the minivan that fled the scene upon appellant's arrest in Delaware was not the same co-conspirator driver who was testifying against the appellant in the four matters being tried in Philadelphia, this court was persuaded that the surrounding circumstances of this attempted robbery in Delaware and those occurring in Philadelphia were nearly identical and thus probative of Appellant's common plan and identity. Further, this court found that the probative value of appellant's arrest in

Delaware outweighed any prejudice that would result to the appellant from this evidence being presented at trial to the jury.

Moreover, this court gave a limiting instruction to the jury specifically instructing them that this evidence was to be used by them for the limited purpose to show that the appellant engaged in a common scheme or plan which tends to show identity and that this evidence was not to be used by them for any other purpose, including bad character or criminal tendencies or to infer guilt.[4] N.T. 4-27-17 at pp.40-41. This Court therefore permitted evidence of appellant's Delaware arrest to be used for this limited purpose.

## IV. Harsh and Excessive Sentence

Appellant was sentenced to a total of 192 to 456 years' incarceration.[5] The sentence was within the guidelines and appellant does not argue this point on appeal. Rather appellant contends, inter alia, that this court in sentencing him did not give due consideration to his age (almost 30 when these crimes occurred), his being a previous victim of gun violence, his addiction to prescription medications, his mental ailments and the need to be medicated for it, his community involvement (he was once a youth coach). He further contends that confinement in a state correctional facility is not the least restrictive sentence necessary to effectuate the aims of Pennsylvania's sentencing laws.

The facts of the four cases against appellant had a common chilling theme. Appellant pointed a gun at his victims, and after demanding their possessions, and after each victim complied,

---

[4] Standard Criminal Jury Instruction 3.08 "Evidence of Other Offenses as Substantive Proof of Guilt"
[5] 4 counts of Criminal Attempt-Murder 80-160 years; 6 counts of Robbery-Inflict Serious Bodily Injury 42-120 years; 6 counts of Conspiracy-Robbery-Inflict Serious Bodily Injury 42-120 years; 4 counts of Possessing of Firearm Prohibited 16-32 years and 4 counts Firearm Not To Be carried Without A License 12-24 years.

- 10 -

rather than simply leaving the scene in a waiting car, appellant inexplicitly and with extreme cruelty and callousness chose to shoot each of his defenseless victims.

Robert Gotwalt was shot in the back as he came to his door to see what was happening outside as appellant was robbing two other men. The bullet ripped through his lungs and small intestine. He underwent surgery to repair this damage during which one foot of his small intestine had to be removed. Following his hospitalization, he spent almost five (5) months at Moss Rehabilitation Center. He remains paralyzed due to the damage sustained to his spine, which was completely severed. He remains catheterized and due to damage sustained to his bowels, is unable to have a bowel movement without the use of a suppository. N.T. 4-20-17, pp. 15-22. As Mr. Gotwalt testified to at appellant's sentencing via video, his life was completely destroyed by the appellant. His paralyzed condition leaves him feeling that he has become a burden on his family and others. (*N.T. 7-17-17, video testimony not transcribed.*)

Maurice Wallace was shot at twice by the appellant after taking his possessions. The first shot struck him in the hip and the other fortunately missed striking him in the head as it cut a hole through the brim of his cap. His left hip was shattered and his right hip was broken, as the bullet, which remains lodged in his right hip, traveled across his torso. He spent three and one-half (3½) weeks in the hospital. He was forced to lay flat during his hospitalization, due to the nerve damage caused by the gunshot. After extensive physical therapy he remains "numb from the knees down." He continues to treat with doctors for these injuries, takes pain medication every day and continues to walk with a cane. N.T.4-24-17, pp. 19-28.

Charles Allen Ruffin was robbed by the appellant and after giving up his possessions was shot in the chest. The bullet went through his chest and out his back. He was hospitalized for a week for his injuries. N.T. 4-19-17, pp. 57-58.

Elvin Martes was shot twice by the appellant after he was already defenseless and lying on the ground. He underwent three (3) surgeries to reconstruct his esophagus and stomach, as well as to treat a collapsed lung. He also sustained significant liver damage and was hospitalized for two (2) weeks. He continues to be in pain and remains in treatment with his doctors. Due to his injuries his physical activities are greatly restricted, including leaving him unable to play or engage in sports with his children. He is unable to do any lifting and due to this physical restriction has not been able to find a job. N.T. 4-25-17, pp. 57-68.

Imposition of a proper sentence is a matter vested in the sound discretion of the trial court. *Commonwealth v. High*, 450 A.2d 158, 304 Pa.Super.174 (1982). In determining whether a sentence is manifestly excessive, the appellate court must give great weight to the sentencing judge's discretion, as the trial judge is in the best position to measure factors such as the nature of the crime, the defendant's character, the defendant's display of remorse, defiance or indifference. *Commonwealth v. Andrews*, 720 A.2d 764, Pa. Super (1998), affirmed, 564 Pa. 321, 768 A.2d 309 (Pa.2001).

In the instant matter, this court reviewed the presentencing report and mental health assessment of the appellant and in keeping with the statutory requirements set forth in 42 Pa. C.S. §§ 9721(b), including the need to protect the public and the gravity of the offenses as they relate to the impact on the victim and community and the rehabilitative needs of the defendant, this court imposed a guideline sentence for the offenses for which appellant was convicted. The callous and serious nature of these offenses, shooting defenseless victims after they have turned over their possessions, dictate that the public needed to be protected from the appellant. This court is very mindful of the rehabilitative needs of the appellant, as well as his being the previous victim of gun violence and his addiction and medical issues. However, given the horrific, unexplainable and

- 12 -

unnecessarily violent nature of these offenses and their impact on the victims and the public at large, a guideline sentence that serves to protect the public clearly serves the needs of society as set for in the statutory language of 42 Pa. C.S. §§ 9721(b). This Court therefore sentenced the appellant accordingly.

## Conclusion

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief. For the reasons set forth above, the judgment of the trial court should be affirmed.

3/19/18
_____
Date

_____
HONORABLE CHARLES A. EHRLICH